THE CONTINENTAL NATIONAL BANK, Appellant, v. THE NATIONAL BANK OF THE COMMONWEALTH, Respondent.

Where a forged certification of a check is presented, at the bank upon which the check is drawn, to the teller whose certificate it purports to be, and he pronounces it genuine, he adopts the certification, and the bank is bound by it the same as if it was genuine.

It is not necessary to an equitable estoppel that the party should intend willfully to mislead; but whatever may be the intent, if he make such a representation as a sensible man would take to be true, and believe that it was meant that he should act upon it, and he does so act, the party making the representation is precluded from contesting its truth.

So also, it is not necessary that a party should act affirmatively upon a declaration to claim an estoppel. If he has acted not in reliance upon it, but

has means in his power to retrieve his position, and relying upon the statement and in consequence of it, he refrains from using these means, his claim will be upheld.

The arrest and detention of a swindler are powerful means in coercing restoration of property he has unlawfully obtained, and the loss of these means in consequence of a reliance upon the declarations of another estops that other from denying the truth of the declarations (RAPALLO, J., dissenting).

C. & Co. delivered to R. certain gold checks and certificates, receiving therefor R.'s check upon plaintiff's bank, purporting to be certified by its teller. C. & Co. immediately sent a messenger with the check to plaintiff's bank, who handed it to the teller, asking if it was all right. The teller replied that it was. The messenger immediately returned and reported this to C. & Co. The certification was in fact forged. Relying upon the declaration of the teller, C. & Co. refrained from taking such measures as might and probably would have stopped the payment of the gold checks, or a portion of them. C. & Co. deposited the check with defendant. Plaintiff brought suit to recover back the money paid thereon. Upon the trial the judge, after charging, in substance, that if C. (one of the firm of C. & Co.) had done all that could be done on his part at the time of making the declaration, and had put himself in such a position that the declaration could not affect his action, then the principle of estoppel would not apply, charged as follows : " The delivery of these gold checks on the part of Mr. C., it is insisted upon, is in law a delivery of the gold. I think it was not."

*Held*, that although the charge, if construed as a statement of law applicable to all cases, might be technically inaccurate, yet, as used, it simply conveyed the idea that there was not such a delivery as prevented the interception of the checks and stoppage of payment, and so considered it did not mislead the jury, and was not error. Also *held*, that plaintiff was estopped by the declaration of its teller from questioning the genuineness of the certification.

(Argued December 4, 1872; decided December 17, 1872.)

APPEAL from judgment of the General Term of the Supreme Court in the first judicial district, affirming a judgment in favor of plaintiff entered upon a verdict.

The action was brought to recover $63,062.50 paid by plaintiff upon a check dated May 1st, 1866, drawn upon plaintiff by one John Ross to the order of J. S. Cronise & Co. The check purported to be certified by the teller of plaintiff's bank and was received by Cronise & Co. from John Ross, the maker, as a certified check, and

by Cronise & Co. deposited in defendant's bank. The certification was a forgery.

John Ross, who drew this check, was a dealer with the plaintiff and kept an account at its bank. On the 30th of April, 1866, Cronise & Co. sold $50,000 of gold, deliverable the next day, the 1st of May. This sale was made to brokers. These brokers " gave up," according to the phrase of the gold exchange, the name of John Ross as their principal, and that name was accepted by Cronise's clerks or partner in his absence. On the 1st of May, at about a quarter-past two o'clock, Ross presented himself at the office of Cronise & Co., never having been seen or known by any of the firm before. He presented the check in controversy in this case and asked for the gold coming to him, and stated he intended to make delivery of the gold to Albert Speyers.

Cronise handed the check to his clerk and told him "to go to the Continental Bank and see if that check was all right, and if not right to go to Speyers and stop the gold." The clerk went as directed, presented this certified check to the teller of the plaintiff's bank in the ordinary way, as the teller stood at his desk, and said to him, "Is that all right?" to which the teller replied, "yes." The messenger immediately returned and reported to Cronise this information. He had been absent not to exceed two minutes, but before he returned Ross had received gold checks and certificates to the amount of $50,000, to wit: Eight gold checks for $5,000 each on the Bank of New York, payable to his order, and two gold certificates for $5,000 each issued by the United States Treasury, payable to bearer, and had left the office. Cronise testified that he relied entirely upon the information obtained from plaintiff's bank, and in consequence took no steps to pursue Ross. Ross took the checks to the Bank of New York. Upon demanding the gold he was required by the teller of that bank to verify or identify himself before they would deliver the gold to him. This identification, which he accomplished by going to the Union Bank and bringing the authentication of its teller, occupied ten or

fifteen minutes before he was able to get the gold which he demanded. That day or the next Ross left the country and has never been heard of since. Cronise & Co. indorsed the check given by Ross and deposited it in the defendant's bank at three o'clock on the afternoon of the 1st of May. The check was sent in through the clearing-house and charged to plaintiff in favor of defendant upon the morning of the 2d of May in the usual way. About twenty minutes past two o'clock on the following day, notice was given defendant that the certification was a forgery.

The court was requested to charge:

2d Request. That, to estop plaintiff, the check must *have been taken* for value *on the faith* of the acts or declarations of the plaintiff's teller.

3d Request. That it was not enough to show acts or declarations of plaintiff's teller inducing the belief that the certification was genuine, but it must be shown that the check was taken for value on the faith of such acts or declarations.

5th Request. That if the check was not shown to plaintiff's teller until after Cronise & Co. had actually delivered the gold checks and certificates to Ross, then the only question was the question of forgery.

6th Request. That if nothing further remained to be done by Cronise & Co. to complete their contract with Ross, then the delivery was not made on the faith of the statements of plaintiff's teller.

7th Request. That the jury could not speculate upon what *might* have been done or attempted by Cronise & Co., after the delivery by them of the gold certificates or checks to Ross, had they been apprised that the certification was a forgery after such delivery.

8th Request. That defendant's rights were not superior to those of Cronise & Co.

9th Request. That plaintiff was bound by the acts and declarations of its teller only so far as the same were within the scope of his authority; and that his verbal admission was

not binding on plaintiff, unless authority to make such was proved or the statement ratified.

Each of which requests the judge refused to charge, except as he subsequently charged, and an exception was taken to each refusal.

The portion of the charge excepted to and other facts appear in the opinion. The jury found a verdict for the defendant, adding to their verdict the following words:

"We also find the certification of the check in question to be a forged certification."

*Luther R. Marsh* for the appellant. The statement of defendant's teller did not amount to an *estoppel in pais,* as it does not appear it was made to mislead. (*Pickard* v. *Sears,* 6 Ad. & Ell., 469; 33 E. C. L. R., 257; *Plumb* v. *Cattaraugus Co.,* 18 N. Y., 392, 394; *Finnegan* v. *Carraher,* 47 id., 493, 500; *Piper* v. *Gilmore* (Maine), 3 Am. Law Reg. [N. S.], 584; *Jewett* v. *Miller,* 10 N. Y., 402.) To claim an *estoppel in pais* it is necessary that the party urging it should have acted in the transaction and changed his position on the faith of it. (*Pickard* v. *Sears,* 6 Ad. & Ell., 469; *Welland Canal Co.* v. *Hathaway,* 8 Wend., 480; *Pres. Cong. of Salem* v. *Williams,* 9 id., 147; *Dezell* v. *Odell,* 3 Hill, 215; *Frost* v. *Sar. Mut. Ins. Co.,* 5 Denio, 154–158; *Pike* v. *Acker,* Hill & D. Supp., 90; *Truscott* v. *Davis,* 4 Barb., 495; *Power* v. *Pinkerton,* 1 E. D. Smith, 30; *Brookman* v. *Metcalf,* 4 Robt., 568; *Lawrence* v. *Brown,* 5 N. Y., 394–401; *Brown* v. *Rowen,* 30 id., 519–541; *St. John* v. *Roberts,* 31 id., 441; *Shapley* v. *Abbott,* 42 id., 443–448; *Dyer* v. *Cady,* 20 Conn., 563; *Rowe* v. *Jerome,* 18 id., 138; *Wilcox* v. *Howell,* 44 N. Y., 398; *Malony* v. *Horan,* 12 Abb., 289; *Eldred* v. *Hazlett,* 33 Penn. R., 307; Herman Estoppels, 445, § 449.) The question of estoppel, after the jury found that plaintiff's teller had recognized the certificate, was a question of law and not of fact. (*Martin* v. *Angell,* 7 Barb., 407, 409; *Lounsberry* v. *Depew,* 28 id., 44; *Dezell* v. *Odell,* 3 Hill, 215.) The teller had no authority to admit

that the forged certificate was genuine, and his statements in this respect did not bind the bank. (*Farmers and Mechanics' Bank of Kent Co.* v. *Butchers and Drovers' Bank*, 16 N. Y., 124; Denio's opinion, 14 id., 623; Brown's opinion, 28 id., 425; in *Mead, Receiver,* v. *The Merchants' Bank of Albany*, 25 id., 143; *Irving Bank* v. *Wetherald*, 36 N. Y., 335.)

*James Emott* for the respondent. Defendant is entitled to the benefit of any estoppel of which Cronise could have availed himself. (*Farm. and Mech. Bank* v. *Butch. and Drov. Bank*, 14 N. Y., 623; *Griswold* v. *Haven*, 25 id., 595; *N. Y. and N. H. R. R.* v. *Schuyler*, 34 id., 30; *Ferguson* v. *Hamilton*, 35 Barb., 457; *Moss* v. *Averill*, 6 Seld., 450, 460; *Van Duzer* v. *Howe*, 21 N. Y., 538.) Plaintiff will not be permitted to retract its statement if Cronise was led by it to do or omit things he might have refused or have done, and which were prejudicial to his interests. (*Baker* v. *Union Mut. Life Ins. Co.*, 43 N. Y., 283, 289, and cases cited; *Plumb* v. *Cattaraugus Co.*, 18 id., 392, 394; *Pickard* v. *Sears*, 6 A. & E., 469, 475.) If plaintiff was bound by the statement of its officer, it was most clearly estopped. (*Irving Bank* v. *Wetherald*, 36 N. Y., 335.) The things done by Cronise and defendant on the faith of the statement of plaintiff's officer, are sufficient to estop plaintiff from denying its agent's statement. (*Kingsley* v. *Vernon*, 4 Sandf. [S. C.], 361; *Irving Bank* v. *Wetherald*, 36 N. Y., 335; 3 Comst., 151; 4 id., 236; 42 Barb., 18; *Delaware Bank* v. *Jarvis*, 29 N. Y., 226; *St. John* v. *Roberts*, 31 id., 442; *Brown* v. *Montgomery*, 20 id., 287.) Plaintiff's teller was authorized to make the statement made by him, and plaintiff is bound by it. (*Griswold* v. *Haven*, 25 N. Y., 595; *Irving Bank* v. *Wetherald*, 36 id., 335; *Merchants' Bank* v. *State Bank*, 10 Wallace, 604; *Van Duzer* v. *Howe*, 21 N. Y., 538.)

Folger, J. The jury have found to be a forgery the writing on the check, which purports to be a certification thereof

by the plaintiff's teller. They have also found that the teller, when resorted to, in effect pronounced it genuine.

That the plaintiff would be bound by the act of its teller, had he in fact certified the check, is settled. (*Far. & Mech. Bk.* v. *Butch. & Drov. Bk.*, 16 N. Y., 125; S. C., 14 N. Y., 623.) Nor do we doubt that an admission by him that it was genuine, made on the presentation to him of the counterfeited certification and inquiry put, also binds the plaintiff. We can see no difference in result, and effect upon others dealing with the check on the strength of that admission, between writing "Timpson, teller," signifying good, upon a worthless check, and declaring that the words "Timpson, teller," already there, were written there by him. In the one case they are his own, and signify good. In the other he adopts them as his own, and so makes them his own, and they signify good. This was the effect of his admission. (And see 57 *Maine, infra, and Greenfield Bk.* v. *Crafts*, 4 Allen, 447.)

There seems to be no dispute but that the defendant takes the place of Cronise & Co., and may avail itself of any defence to the action of the plaintiff which that firm of brokers could have made.

The question then arises, is the plaintiff, by the other facts presented, estopped from maintaining that in truth the certification was a forgery, and the admission of its teller an innocent mistake?

There is no disagreement as to the general definition of an estoppel *in pais*. It is agreed that there must have been some act or declaration of the plaintiff or of its agent to the defendant's assignors, which so affected the conduct of the latter to their injury, as that it would be unjust now to permit the plaintiff to set up the truth of the case to the contrary of its mistaken act or declaration.

But the plaintiff insists that there are certain limitations to be put upon this generality.

1st. The plaintiff claims that it is necessary that its act or declaration must have been made to mislead.

To this proposition the plaintiff cites *Pickard* v. *Sears* (6

Ad. & Ell., 469; 33 Eng. Com. Law, 115), where the court say: "Where one by his words or conduct *willfully* causes another," etc. But this word "willfully," used in the decision in that case, has subsequently received judicial comment and limitation. Thus in *Freeman* v. *Cooke* (2 Exch., 654) the court say: "By the term 'willfully,' however, in that rule, we must understand, if, whatever a man's real intentions may be, he so conducts himself that a reasonable man would take the representation to be true, and believe that it was meant that he should act upon it, and he did act upon it as true, the party making the representation would be equally precluded from contesting its truth; and conduct by negligence or omission, where there is a duty cast upon any person by usage of trade or otherwise to disclose the truth, may often have the same effect."

So in *Cornish* v. *Abington* (4 Hurl., & N., 549), Pollock, C. B., says: "The jury having found that the defendant, whether intentionally or not, led the plaintiff to form an opinion that he was dealing with the defendant and induced him to furnish goods to the defendant, the defendant must pay him for them." And referring to *Freeman* v. *Cooke*, and *Pickard* v. *Sears* (*supra*), the learned chief baron remarks to the effect that the word "willfully" means nothing more than "voluntarily," and he holds that if the representation was made voluntarily, though the effect upon the hearer was produced unintentionally, the same result would follow; and that if a party uses language which, in the ordinary course of business and the general sense in which words are understood, conveys a certain meaning, he cannot afterward say that he is not bound, if another so understanding it has acted upon it. Of course, this general language here extracted should be read in connection with the facts of that case to prevent carrying the force of these words too far. But it is shown that "willfully" and "voluntarily," as used in the definition of an estoppel, are convertible.

In *Man. & Trad. Bk.* v. *Hazard* (30 N. Y., 226) it is said that it is not necessary to an equitable estoppel that the party

should design to mislead.   Be this *dictum* or rule, we do not find that it has been in this State disputed or questioned.

In *In re Bahia & S. P. Railway Co.* (Law R., 3 Q. B., 584) it is held that if a representation is made with the intention that it shall be acted upon by another, and he does so, there is an estoppel from denying the truth of what was represented to be the fact, and that the case is within the principle of *Pickard* v. *Sears*, as explained by *Freeman* v. *Cooke* (both *supra*).

The word "willful" does not mean *malo animo*, but so far willfully that the party, making the representation acted upon, means that it shall be acted upon in that way.   (Per Compton, J., in *Howard* v. *Hudson*, 2 Ellis & Bl., 1.)

And we hold that there need not be, upon the part of the person making a declaration or doing an act, an intention to mislead the one who is induced to rely upon it.   There are cases in which parties have been estopped where their acts or declarations have been done or made in ignorance of their own rights, not knowing that the law of the land gave them such rights.   Here, certainly, there could be no purpose to mislead others, for there was not the knowledge to inform the purpose, and both parties were equally and innocently misled. (*Storrs* v. *Barker*, 6 J. C., 166.)   Indeed, it would limit the rule much within the reason of it, if it were restricted to cases where there was an element of fraudulent purpose.   In very many of the cases in which the rule has been applied, there was no more than negligence on the part of him who was estopped.   And it has long been held, that where it is a breach of good faith to allow the truth to be shown, there an admission will estop. (*Gaylord* v. *Van Loan*, 15 Wend., 308.)   There are decisions where the rule has been stated as the plaintiff claims it.   We have looked at those cited by it.   It was not necessary to the conclusions of the court in those, that such restriction should be put upon the rule, and we do not think that the language employed was used with the intention of making such a limitation, for the facts of the case did not require it.

2d. The plaintiff further claims that Cronise & Co. parted

with the gold and took the check before the declaration of the teller was made known to them, and that before an estoppel can be insisted upon it must appear that they acted in reliance thereupon, or altered their position in consequence thereof, or parted with some value on the faith therein.

The fair result of the testimony is, that Ross left the office of Cronise & Co. before the return of their messenger to it from the bank, and Cronise & Co. had then delivered the gold checks. They did no act, after his return, relying upon the declaration of the teller which the messenger brought to them.

Assuming, for the present, that they did in reliance upon that declaration refrain from action and left untaken any measures for the arrest of Ross or the stoppage of payment on the checks he had received; assuming that it is reasonably probable that, if they had been told by the plaintiff the reverse of what they were told, they would have acted and would have taken those measures; assuming that it is reasonably probable that action and such measures would have prevented the whole or some part of the damage which befell, can it be held that the conduct of Cronise & Co. was so affected to their injury by the declaration of the plaintiff as that the defendant may set up the declaration in estoppel of the plaintiff? The proposition contained in this query, we understand the plaintiff to resist. And this, because the act, the affirmative act, had been done which changed the position of Cronise & Co. toward Ross and the transaction before the declaration was made known to them, and had not been done in reliance upon it. And this is a denial, that after a declaration is made and is relied upon, an omission thereby induced to act and to take such measures as will arrest an impending evil, and an injury resulting from such omission, can be made available as an estoppel.

In *Howard* v. *Hudson* (*supra*), Lord CAMPBELL, C. J., recognizes the existence of the principle, that doing an act and omission to act are the same. (And see *Helme* v. *Phil. Life Ins. Co.*, 61 Penn. St., 107.) In *Knights*

v. *Wiffin* (Law R., 5 Q. B., 660) the person who relied upon the declaration had before it was made and not in reliance upon it, paid his money for property not delivered, but after it was made relying upon it, took no active course of conduct, remaining content and passive. Had the declaration been the reverse of what it was, which would then have been true, he might have taken active measures tending to retrieve his position. He rested satisfied in the belief, as a reasonable man, that the property had been passed to him as agreed. And he was damaged. The right of estoppel was there upheld, and it was maintained upon the ground of the plaintiff relying upon the statement and taking no steps further, and of his abstaining from active measures of recovery in consequence of the statement. It was there held, that acquiescent reliance upon the defendant's statement was an alteration of the plaintiff's position.

In *Casco Bank* v. *Keene* (53 Maine, 103) the question was presented. The plaintiff there held a note purporting to have been signed by the defendant. Hearing that the same was forged, the plaintiff asked the defendant, who, looking at the note, admitted the signature to be genuine. The plaintiff, in reliance on that admission, refrained from taking any proceedings against him who passed the note to it, so as to secure payment from him. The instructions to the jury were: That if the plaintiff, relying upon the defendant's admission, was induced to refrain from obtaining security by arrest of the one passing the note upon it or by attachment of his property, and thereby sustained an injury, the defendant would be estopped from denying his signature. This instruction was declared by the court on review to be in harmony with the principles applicable to estoppels *in pais*. (And see 15 Wend., *supra*, and *Brown* v. *Sprague*, 5 Denio, 545.)

These cases appear to us to lay down a sound rule. It must be that the conduct of men, which may be influenced by the declarations of those with whom they deal; is not confined to that which is shown by affirmative and positive acts following

upon and induced by those declarations. Conduct is not alone that which is active, positive and affirmative. Conduct, as limited to this inquiry, is the reserve of one's own powers of person and property, and of those means of help which can be summoned from friendly or accommodating sources and from the tribunals and officers of justice, and is as often forbearance of their use and quiescence and contentment with affairs as they are, as action designed to change affairs. And such quiescence and content, induced by false or erroneous statement, may be quite as damaging as any result from action. It is as bad to fail to recover property gone, when with the knowledge of an existing fact it might have been retrieved, as it is to lose it. And so it is as damaging to rely in quiet upon an untrue statement, to the neglect of using the means of recovery, as it is to rely upon an untrue statement, and by action thereon meet with loss irreparable. To hold otherwise, would be to assert that the law makes a difference between damage received by action and omission to act, in circumstances precisely similar, save in these elements. When an act produces conduct from which flows injury, it cannot matter whether that conduct be affirmative or negative, active or quiescent.

We assumed, for the purpose of the previous consideration of one branch of the subject, that Cronise & Co. did, in reliance upon the declaration of the plaintiff, refrain from action and leave untaken any measures. The jury have so found the fact, and the finding is sustained by the testimony. We also assumed that it was reasonably probable that if they had been told the truth by the plaintiff they would have acted, and have taken measures which would have prevented the whole or some of the injury which befell. The jury have found that this assumption is well founded.

Though, as is conceded herein, Ross left the office of the brokers before their messenger returned, he had left but a very short time; a time so short that, had the plaintiff declared the certification a forgery and the check worthless, there was ground for the jury to find that there was time for the broker's clerk, with his speed of foot, to have gone from

the bank of plaintiff to the office of Speyers, there have learned the falsity of Ross' assertion of a delivery of gold to Speyer, and thence to the office of Cronise & Co., and have delivered his message soon enough for measures to have been decided upon and taken for the stoppage of the payment of the checks at the Bank of New York. We leave out of view, for the present, the checks upon the subtreasury.

Nor was it a strained, unnatural nor unjustified inference for the jury to make, that the clerk would so have done, and that Cronise & Co. would have taken such measures and made stoppage of payment. It was but applying to the facts of the case, and to the position of the parties in this transaction, the common knowledge of human nature and its workings under powerful incentives, and at a particular spot in the State and a particular hour of the day when those incentives are pressed in their greatest strength.

And from these findings, thus authorized, it was a legitimate conclusion that Cronise & Co. suffered injury by the declaration to them of the plaintiff.

And if there is nothing else in the case, the verdict and judgment are to be sustained.

The plaintiff insists, however, that the learned judge at circuit made several errors in his refusals to charge as requested, and in the charge which he delivered to the jury.

We will notice all of these instances which are indicated upon the points handed up, alluding to the requests by the numbers given to them in the points.

The second, third and fifth requests are already covered by what we have said.

The seventh request is: " That the jury cannot speculate upon what might have been done or attempted by Cronise & Co. after the delivery by them of the gold certificates or gold checks to the person calling himself John Ross had they been apprised that the certificate was a forgery after such delivery."

If, by the word "speculate," which is the word of controlling meaning in the request, was meant to guess, or to reason to practical results from unproven premises, doubtless the

jury had no right so to do. And there would have been no error in the learned judge if he had so told the jury. But it would have been in the nature of an abstract proposition, not necessarily involved in nor growing out of the particular case. Hence it was not error for him to decline to charge, except as he did thereafter charge. He did charge them that Cronise & Co., to set up an estoppel, must have had time to stop payment of the gold; that the circumstances must have been such as that they could have done it; that they must have occupied such a relation to the transaction as that they could, with reasonable diligence, have arrested the crime in its consummation and have secured the gold; that they must have still stood in a position where they could have corrected any act and could have saved the gold. This put the jury upon the proper inquiry. Nor can we concede that, at the close of the trial, the question of estoppel had become one of law only and for the court, as is claimed by the learned counsel for the plaintiff. He admits that there were two questions yet for the jury; whether the certification was forged or not, and whether its genuineness was admitted. And, surely, it was still a question of fact how much relative time had been spent by the respective actors from the moment Ross left the office of Cronise & Co. until the payment of the checks at the Bank of New York; and, considering the relative positions of the different business places, whether, in that lapse of time, Cronise & Co., under all the circumstances, could have made effectual interposition to stop payment of the checks delivered to him, or have made any successful effort at recaption of the gold if he had received it.

It is claimed that the learned judge erred in charging the jury that the delivery of the gold checks was not, in law, a delivery of the gold.

The points call our attention to that part of the charge in which the language of the judge is: "The delivery of these gold checks on the part of Mr. Cronise, it is insisted upon, is, in law, a delivery of the gold. I think that it was not."

It is proper to see in what connection this was said. For,

standing alone or applied to any and every case of a delivery of checks, it might be in some of them erroneous. What was the practical application of it for the minds of the jury? The topic then under the learned judge's and the jury's attention was whether Cronise & Co. could, under the facts of the case, in any proper view of them, be considered as injured by the plaintiff's declaration; and the judge precedes the remark excepted to by saying: " If Cronise, in point of fact, had done all that could be done on his part at that time, and had put himself in such a position that this admission could not affect his action to his prejudice, then the principle of estoppel would have no application to the case so far as he is concerned." Then he tells them, in the remark excepted to, in effect: It is insisted that the delivery of these checks was a delivery of the gold, in law, so that he could not reclaim it; and if he could not reclaim it, then he was not injured by the declaration, for there was nothing he could do after such delivery. We may infer, properly, from the words " it is insisted," that all this had passed before the jury in the argument of counsel, either to the jury or to the court, and was a reference thereto. If it should be admitted to be technically inaccurate as a statement of law, applicable to all cases, it did not tend to mislead on this occasion; and, for the purpose for which it was uttered, it was correct. Doubtless the handing over of the checks was a delivery of the gold to fulfill the contract for the sale of it, in accordance with the rules of the brokers' board under which the original parties to the transaction acted. But it was not such a delivery as prevented Cronise & Co. from intercepting the checks at the counter of the Bank of New York, and there forbidding and stopping payment of them. And this is true, whether the gold be dollars, in which to make payment of a debt payable, or a commodity to be transferred in satisfaction of a contract for the sale and delivery of a chattel. The scope of the remarks of the court to the jury was that, notwithstanding Cronise & Co. had put these checks into the hands of Ross, still they could stop payment of them at the place of pay-

ment. And, so considered, it did not mislead the jury from the question at issue, or give them an erroneous rule of law by which to dispose of it.

The plaintiff claims that even if it should be held that it is estopped to show the truth, as to so much of the gold as was paid to Ross over the counter of the Bank of New York, it should not be as to so much of it as was represented by the checks on the subtreasury. And if these checks were alone concerned in the transaction, it might be said with force that Ross could have as soon got payment on them and clear escaped, as Harmon, the clerk, could have made his errand and returned. But these checks are connected with those on the Bank of New York; and Ross did not depart with the avails of the one until he had got the avails of the other. If Ross first went to the subtreasury and obtained payment, then he afterward went to the Bank of New York; and he was there, or to and from there, from ten to fifteen minutes; and this opportunity for stopping payment of the checks at the Bank of New York was also opportunity for arrest of his person, and obtaining from him the gold got at the subtreasury. And if it be said that he may have passed away the checks on the subtreasury in the street to a confederate, still he was at the Bank of New York to be seized, and the coercion of arrest to be used upon him. In the 53d Maine (*supra*) arrest is named as one of the means of obtaining security which the plaintiff had let slip; and in 5 Law Rep., Q. B. (*supra*), Blackburn, J., goes so far as to say that it needs not that it should appear that any benefit would result from the attempt to secure payment, but that the injured party had the right to make that attempt; and losing the exercise of the right by his reliance on the declaration, the declarant was estopped. We need not go so far here. Arrest and detention of the swindler is a powerful means in coercing restoration; and arrest and detention were as probably in the power of Cronise & Co. as the stoppage of the payment of the checks at the Bank of New York.

The judgment appealed from should be affirmed, with costs to the respondent.

All concur, except RAPALLO, J., who concurs as to all but the subtreasury gold.

Judgment affirmed.