LEONARD D. WHITE et al., Appellants, *v.* THE CONTINENTAL NATIONAL BANK, Respondent.

The drawee of a bill of exchange, by accepting and paying it, only vouches for the genuineness of the signature of the drawer, not of the body of the instrument; the holder claiming to be entitled to receive the amount thereof is held to a knowledge of his own title and of the genuineness of every part of the bill save the signature of the drawer, and the drawee has a right to rely upon the presumptive ownership of the apparent holder.

Plaintiffs, on the seventeenth of April, accepted and paid to defendant a bill drawn upon them, which, before acceptance, had been altered by raising the amount. The bill had been deposited with the defendant, and the amount credited to the depositor; the forgery was not discovered until October fifth. In an action to recover back the money paid, *held* (MILLER, J., dissenting), that as defendant, in dealing with the bill or its avails, did not act upon the faith of any admission of plaintiffs, expressed or implied, as to the genuineness of the body of the instrument, or of any act or declaration on their part, but upon the apparent title and genuineness, and the responsibility of those from and through whom it received the bill, plaintiffs owed no duty to it in respect to the forgery, and that no negligence on their part could defeat their right of recovery

*The Con. Nat. Bank* v. *The Nat. Bank of Com.* (50 N. Y., 575) distinguished. Also, *held*, that regarding the case as one of mutual mistake in respect to which neither party was in fault, plaintiffs were entitled to recover.

(Argued December 8, 1875; decided March 21, 1876.)

APPEAL from judgment of the General Term of the Court of Common Pleas in and for the city and county of New York, affirming a judgment in favor of plaintiffs entered upon a verdict, and affirming an order denying a motion for a new trial.

This action was brought to recover back money paid by plaintiffs to defendant, upon an altered sight draft drawn upon plaintiffs by their correspondent in Buffalo.

The draft was drawn for the sum of twenty-seven dollars. After its delivery to the payee, and before presentation and acceptance, it was altered so as to change the amount to $2,750. It was sent by one Horton, of Baltimore, to Austin Baldwin & Co., New York, and received by them August 16, 1869. That firm deposited it on the same day with defendant, and for its avails sent to Horton a sterling bill of exchange on London at sixty days. Defendant credited said firm the amount of the draft. The draft was presented, August seventeenth, to and acccepted by plaintiffs, payable at the Leather Manufacturers' Bank, by whom it was paid to defendant. In the regular course of business between plaintiffs and the drawer of the draft, monthly statements of accounts were rendered. The August account was rendered the forepart of September. It was not examined by the drawer until October fifth, when the alteration was first discovered. Plaintiffs were advised on the sixth, and immediately notified defendant.

The court charged among other things : " If the jury believe from the evidence, that if Austin Baldwin & Co. had been, either directly by the plaintiffs or by them through the defendants, informed within a reasonable time after the acceptance of the draft by the plaintiffs, that the same was forged for an amount exceeding the sum of twenty-seven dollars, they,

Austin Baldwin & Co., or the defendants, could have taken steps to trace and arrest the crime in its consummation, and have prevented the acceptance of their bill of exchange on the City Bank of London, and that they failed to take either of such steps by reason of the acceptance and payment of the draft in question by the plaintiffs, and the failure of the plaintiffs to advise them of such forgery until on or about October 6, 1869, then the plaintiffs are estopped from denying the genuineness of the draft in question, and that the defendants are entitled to a verdict." To which the plaintiffs' counsel excepted.

Plaintiffs' counsel requested the court to charge, that plaintiffs were not bound to know that this draft had been altered in the way it was altered; and that all they were bound to know when they accepted it was that the signature to the draft was genuine. Also, that if the plaintiffs were not legally chargeable with knowledge of the fact that the draft had been altered, no duty devolved upon them to give any earlier notice than was given, either to Austin Baldwin & Co. or anybody else, of the fact of the alteration.

The court declined so to charge, and the plaintiffs' counsel excepted.

*Hamilton Odell* for the appellants. By the certification of a check the drawee is concluded only as to the signature of the drawer and his own certification. (*Bank of Commerce* v. *Union Bank*, 3 N. Y., 230; *Bk. of Com.* v. *Mech. Bking. Assn.*, 55 id., 211; *Espy* v. *Bank of Cincinnati*, 18 Wall., 605; *Holt* v. *Ross*, 54 N. Y., 472; *Cases of Marine Bank and Bank of North America*, Ct. of Apps., not yet reported; see 14 Amer., 237, note; *Chapman* v. *White*, 6 N. Y., 417; Byles on Bills, 11; *F. Bk.* v. *B. and D. Bk.*, 16 N. Y., 125; *Barnes* v. *Ont. Bk.*, 19 id., 159; *Meads* v. *Mer. Bk.*, 25 id., 143; *Mer. Bk.* v. *State Bk.*, 10 Wall., 647; *Harker* v. *Anderson*, 21 Wend., 372.) Plaintiffs were not chargeable with knowledge of the forgery. (*Canal Bk.* v. *Bank of Albany*, 1 Hill 291; *Bk. of Commerce* v. *Union Bk.*, 3 N. Y., 236;

*Koontz* v. *Central Bk.*, 51 Mo., 275; *Lawrence* v. *Am. Bk.*, 54 N. Y., 436; *Contl. Bk.* v. *Bk. of Comm.*, 50 id., 575; *Kingston Bk.* v. *Eltinge*, 40 id., 391; 55 id., 215; 18 Wall., 619.)   The judge erred in refusing to direct a verdict for the plaintiffs. (*Harris* v. *Wilson*, 1 Wend., 511; *Small* v. *Smith*, 1 Denio, 586; *Gale* v. *Wells*, 12 Barb., 94; *Underhill* v. *Railroad Co.*, 21 id., 497; *Storey* v. *Brennan*, 15 N. Y., 526, 528; *Rouse* v. *Lewis*, 2 Keyes, 359; 50 N. Y., 587.)

*Wm. Allen Butler* for the respondent.   The case was properly submitted to the jury. (*Bk. of Com.* v. *Nat. Mech. Bk.*, 55 N. Y., 211, 213; *Un. Bk. of Troy* v. *Sixth Nat. Bk. of N. Y.*, 43 id., 452, 456.)   It was not necessary that it should appear that defendant acted affirmatively upon the faith of plaintiffs' acceptance in order to entitle it to the benefit of an estoppel. (*Cont. Nat. Bk.* v. *Nat. Bk. of Com.*, 50 N. Y., 575; *Howard* v. *Hudson*, 2 E. & B., 1; *Knight* v. *Wiffin*, L. R., 5 Q. B., 600; *Casco Bk.* v. *Keene*, 53 Me., 108.)

ALLEN, J.   The right of a party paying money to another under a *bona fide* forgetfulness or ignorance of facts, to recover it back from one who is not entitled to receive it, is well established.   The equitable action for money had and received will lie against one who has received money which in conscience does not belong to him. (*Kelly* v. *Solari*, 9 M. & W., 54; *The Bank of Orleans* v. *Smith*, 3 Hill, 560.)

The doctrine has been applied, repeatedly, in cases analogous to the present. (*Bank of Commerce* v. *The Union Bank*, 3 Comst., 230; *The Continental National Bank* v. *The National Bank of the Commonwealth*, 50 N. Y., 575; *National Bank of Commerce* v. *National Mechanics' Banking Association*, 55 id., 211; *The Marine National Bank* v. *The National City Bank*, 59 id., 67.)

That the plaintiffs in this action paid to the defendant, professing to be the holder of the bill, the face of it, in ignorance of the facts disentitling the defendant to receive the same, is not disputed.   Their right to recover the money

thus paid must be unquestioned, unless their right is barred by some circumstance which takes the case out of the general rule, or by some act of their own they have lost the right.

Certain general principles, applicable to commercial paper and regulating the rights and obligations of the several parties thereto, are very familiar and of every day application.

First. The plaintiffs, as drawees of the bill, were only held to a knowledge of the signature of their correspondents, the drawers; by accepting and paying the bill they only vouched for the genuineness of such signatures, and were not held to a knowledge of the want of genuineness of any other part of the instrument, or of any other names appearing thereon, or of the title of the holder. (*Kelly* v. *Solari, supra;* Broom's Legal Maxims, 257; *National Park Bank* v. *The Ninth National Bank,* 46 N. Y., 77; *Merchants' Bank* v. *State Bank,* 10 Wallace, 604; *Espy* v. *The Bank of Cincinnati,* 18 id., 604; *Goddard* v. *The Merchants' Bank,* 4 Comst., 147.)

Second. The defendant, as holder of the bill and claiming to be entitled to receive the amount thereof from the drawees, was held to a knowledge of its own title and the genuineness of the indorsements, and of every part of the bill other than the signature of the drawers, within the general principle which makes every party to a promissory note or bill of exchange a guarantor of the genuineness of every preceding indorsement, and of the genuineness of the instrument. (*Erwin* v. *Downs,* 15 N. Y., 575; *Turnbull* v. *Bowyer,* 40 id., 456; Story on Promissory Notes, §§ 135, 379, 380, 381.) The presentation of the bill, and the demand and receipt of the money thereon, was equivalent to an indorsement. The drawees had a right to act upon the presumptive ownership of the defendant as the apparent holder.

The facts which disentitled the defendant to receive the money, and in ignorance of which it was paid, were those presumed to be within the knowledge of the defendant and not of the plaintiffs. The defendant, in receiving the money

and in disposing of it, did not act upon the faith of any admission by the plaintiffs, express or implied, of any fact which they now controvert in prosecuting this action. There was, therefore, no want of good faith, no negligence, or even want of ordinary care on the part of the plaintiffs in the payment of the money. The defendant, in the entire transaction, acted upon other evidence of its right to the money than the statement or actions of the plaintiffs, and in dealing with the bill and with the money, its avails, acted upon the apparent title and genuineness of the instrument, and the responsibility of those from and through whom it received the bill. The plaintiffs, therefore, owed no duty to the defendant in respect to the forgery, which invalidated the bill and its title to the moneys represented by it.

It follows that there could be no negligence on the part of the plaintiffs which could defeat their right to reclaim the money paid whenever the forgery and the consequent mistake in the payment were discovered. Owing no duty and making no misrepresentation, there was no estoppel to bar the action. The case is distinguishable from *The Continental National Bank* v. *The National Bank of the Commonwealth* (*supra*), in this, that in the case cited the officer of the bank pronounced a forged certification of a check to be genuine, upon which the payee of the check relied, as he had a right to do, and thus relying neglected to take the means then in his power to retrieve his position and save himself from loss. The court held that the circumstances created an equitable estoppel, and that the bank could not thereafter gainsay the genuineness of the certification which it had adopted and upon which the other parties had acted. It will be seen that this estoppel was based upon the admission of a fact peculiarly within the knowledge of the bank upon which the check was drawn, and which it was bound to know, and upon a positive assertion upon which the other party had a right to and did rely. In this case, as we have seen, the plaintiffs made no assertion of any fact within their knowledge, and the defendant did not act or forbear to act upon

the faith of any thing which the plaintiffs said or did or omitted to say or do.

Again, in the case cited, had the teller of the certifying bank disclaimed the forged certification and pronounced it a forgery when presented, the holder of the check would have had ample time to arrest the swindler at the bank of the State of New York before, as the evidence showed, he had received the money on the gold checks, and before he went to the sub-treasury with his gold certificates.

In the case at bar, it is the merest conjecture, with scarcely a possibility to support it, that the defendant, or those from whom it received the bill, could at any time after the transmission of the foreign bill of exchange to Baltimore, have taken any effectual measures either for arresting the swindler or reclaiming the bill bought and paid for upon the credit of the bill. Estoppels cannot be based upon mere conjectures, even if a proper foundation is laid for them in other respects. There is nothing really in the case to distinguish it from *The National Bank of Commerce* v. *The National Banking Association* (*supra*), in which the plaintiff recovered.

Should this action be retried other questions may arise not presented by this record, growing out of the relations between the defendant and other parties, and the character in which the defendant acted, whether as agent or principal. Upon the present record the equities are with the plaintiffs. If they fail to recover, they lose the money absolutely and without legal fault on their part. If the defendant is compelled to reimburse the plaintiffs, it has its remedy over against the prior indorsers; and if they in turn have no remedy against the prior indorsers, it is because they have chosen to deal with irresponsible persons, or those of whose character and responsibility they were ignorant. It would be unjust to father the consequences of their method of dealing upon innocent third persons. But waiving the question as to the responsibility of the defendant for the genuineness of the instrument, and taking the most favorable view for the defendant, which is to regard it as the case of a mutual mis-

take, in respect to which neither was in fault, and in that view and upon that theory, the case is within the principles decided in *The Bank of Commerce* v. *The Union Bank* (3 Comst., 230); *The Kingston Bank* v. *Eltinge* (40 N. Y., 391), and the plaintiffs are entitled to a new trial.

Upon the case as made and upon the exceptions taken at the trial, I am of the opinion that the judgment should be reversed, and a new trial granted.

MILLER, J. (dissenting). The principle is well settled that money paid under a mistake of fact may be recovered back, although the party paying the same has been negligent in making the mistake, unless the payment has placed the other party in such a position as would render it unjust to require him to refund.

Having this doctrine in view the question arises whether the defendant was liable to refund the avails of the altered draft within the rule stated, under the circumstances presented in this case. The draft in question was accepted by the plaintiffs upon the seventeenth day of August, and it is claimed that the defendant, relying upon the plaintiffs' acceptance, lost the means and opportunity of stopping payment of the sterling bill of exchange which had been issued in lieu of the forged draft, by the plaintiffs' omission to inform the defendant of the forgery, and that the question of fact whether such a change of position had taken place as affected the defendant's rights, was properly submitted to the jury by the judge upon the trial. The charge assumed that both parties acted in good faith, and that negligence could not be imputed to either in dealing with the forged draft, and in this respect the judge charged substantially that if the defendant, upon being advised on the seventeenth day of August, could have taken precautionary measures which would have prevented it from sustaining this loss, then the plaintiffs could not recover. This rule as the case stood was not erroneous, and can be upheld within the authorities. Conceding that the acceptance of the draft falls within the rule, that by a

certification of a check the drawer is concluded only as to the signature of the drawee and his own certification, and that he is not bound to know the handwriting of the filling up, yet, when, by means of his omission to act, a loss is sustained, the party in fault shall bear that loss. This doctrine was upheld and is within the ruling in the case of *The National Bank of Commerce* v. *The National Mechanics' Bank* (55 N. Y., 211). In that case the check in controversy was altered after it was certified by raising the amount, and it was held that the sum paid could be recovered unless it was shown that the holder has suffered loss in consequence of the mistake. It is said in the opinion by Judge RAPALLO: " If the defendant had shown that it had suffered loss in consequence of the mistake committed by the plaintiff, as, for instance, if, in consequence of the recognition by the plaintiff of the check in question, the defendant had paid out money to its fraudulent depositor, then clearly to the extent of the loss thus sustained the plaintiff should be responsible." It appeared that the money was paid before the check was presented to the plaintiff, and that the loss had been fully incurred by the defendant before the plaintiff had made the mistake which it sought to have corrected. It will be observed that the case differs materially from the one at bar, for here the acceptance was made by the plaintiffs after the draft had been altered and not before, as in the case cited, and it cannot be doubted that the mistake committed by the plaintiffs by the recognition of the draft caused the defendant to pay the money. It was, therefore, a fair question for the jury whether the loss might not have been averted in season by notice of the forgery.

The case is also brought by the testimony within the distinction taken by some of the judges in *The Union Bank of Troy* v. *The Sixth National Bank of New York* (43 N. Y., 452), that where the defendant necessarily sustains loss by the mistake, unless notice in time to prevent such loss is given, no recovery can be had. It was not necessary to establish that the defendant relied entirely upon the plaintiffs' acceptance to entitle it to claim the benefit of an estoppel;

for even if, in consequence of it, he refrained from using means which he had in his power to prevent the loss finally sustained, the right of estoppel will be upheld and the loss must fall on the party who caused it. (*Continental National Bank* v. *National Bank of the Commonwealth,* 50 N. Y., 575.) The plaintiffs, by failing to take the means to advise the defendant, are brought directly within the rule that when the omission of a party affects the act of another, and he is thereby misled and influenced to his prejudice, the party in fault must bear the loss. The claim that the question submitted to the jury which has been discussed was not material, and that there was no evidence to guide the jury in determining it, is not well founded. It is not difficult to see that the draft given may have been stopped, the forger arrested, the acceptance in London have been prevented or some measures have been adopted which would have saved all parties from loss, if the defendant had been notified of the forgery, and it was proper for the jury to decide this question of fact.

While the instructions to the jury asked by the plaintiffs' counsel and refused contained legal propositions which were abstractly entirely correct in a proper case, neither of them were applicable to the question of fact, which was for the jury, and therefore each of them was properly refused.

There was no error in the admission of evidence or in any of the rulings upon the trial, and the judgment should be affirmed, with costs.

For reversal: ALLEN, RAPALLO, ANDREWS and EARL, JJ.

For affirmance: MILLER, J.; CHURCH, Ch. J., and FOLGER, J., not voting.

Judgment reversed