THIRD NATIONAL BANK of the City of New York, Respondent, *v.* THE MERCHANTS' NATIONAL BANK, Appellant.

*Indorser of commercial paper — warranty thereof — forgery — equitable estoppel — money paid by mistake — when it can be recovered — negligence — notice of the discovery of a forgery — failure to discover the same.*

An indorser of commercial paper impliedly warrants the genuineness of the instrument and of every preceding indorsement, and the fact that a forgery of an indorsement thereon was committed by a person having the same name as the genuine payee makes no difference. It is the signature of the payee that transfers the title to the check, and the mere fact that another person may have the same name gives him no power to make the transfer, and the signature of such person is just as much a forgery as if the names had been different.

Although a bank would otherwise be entitled to recover where it has paid to another bank a check having thereon the forged signature of the payee, which by the latter was presented to it through its correspondent, no recovery of the amount so paid can be had, if the conduct and acts of the bank were such as to create against it an equitable estoppel.

Money paid by mistake can be recovered providing the party seeking to recover has not by his careless or negligent acts injured or prejudiced the person from whom the recovery is sought.

Where a bank makes a payment on a check to a person who is not the payee, it alone is responsible for the loss, and it cannot get rid of such liability by showing that after the loss had occurred there was negligence on the part of another in discovering the forgery, or after it had been discovered, in giving notice to such bank thereof, unless, in the latter contingency it is coupled with proof that the bank was damaged by the failure to give it notice within a reasonable time after discovery.

One who fraudulently passes a bill cannot avoid his liability to refund on the pretext of delay in detecting the forgery or in giving notice of it, and if reasonable diligence is exercised in giving notice after the forgery comes to light, it is all that any of the parties can require.

A failure to discover a forgery, although resulting in loss to another, gives no right of action, as there is no duty imposed on one who receives a forged check from another to unearth the crime; but after the discovery of the forgery the duty is incumbent on the person detecting the imposition to act promptly in giving notice thereof, and if he fails so to do, to the injury of one entitled to notice, he will be prevented from recovering the damage or injury shown to have been actually incurred.

APPEAL by the defendant, The Merchants' National Bank, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 28th

day of October, 1893, upon the verdict of a jury for $4,468, by direction of the court, after a trial at the New York County Circuit.

The action was brought for the recovery of $4,000 alleged to have been paid to the defendant by mistake, under the following circumstances developed upon the trial:

On the 30th of October, 1891, a correspondent of the plaintiff, being the Bank of New Hanover, of Wilmington, North Carolina, issued a check directed to the defendant in the following form, namely:

" $4,000.      State of North Carolina.

   " Bank of New Hanover, Wilmington,

         " *October* 30, '91.

" Pay to the order of Benj. Drew four thousand dollars.

        " W. L. SMITH, *Cash.*

" To Third National Bank, New York.

" N. 2922."

In red ink on the face of said check appear the following words: " Not paid to December 1, '91. Recd. Duplicate."

Indorsed: " Benj. Drew. Pay to the order of National Bank of Savannah, Ga. Savannah Naval Stores Company. W. C. Powell, Pres. Pay American Exchange National Bank, New York, for collection for the National Bank of Savannah, Ga. Thomas F. Thomson, Cashier."

Stamped: " Am. Ex. Nat. Bank, Paid December 17, 1891. Indorsement guaranteed, New York."

This check was intended for Benjamin Drew, who resided in Swan, Georgia, but at his request it was sent by those who obtained it from the Bank of New Hanover in a letter addressed to him at the city of Savannah, Georgia. The check was received by a colored man of that name who resided in the city of Savannah, who, on November 7, 1891, accompanied by an official in the custom house in Savannah, delivered the check to defendant for collection. The defendant mailed the same to its correspondent in New York, the National Bank of the Republic, and, ten days afterwards, receiving notification that the check had been paid by plaintiff, the defendant paid the money to the colored man.

Before the check had been delivered to the defendant for collec-

tion, and on or about the second or third of November, Benjamin Drew, of Swan, Georgia, a white man, who was on a visit to the city of Savannah, having been informed by a telegram that the check had been sent to him by mail, inquired at the post office, and thereafter visited the banks of Savannah, to ascertain if the check had been presented. Upon a visit to the defendant bank he was accompanied by a Mr. Powell, and on that occasion they saw either the cashier or teller, and told him about the mailing of the check and asked if it had been presented, and was informed that it had not. They thereupon stated to defendant that such check was mislaid or lost, and notified defendant that if it was presented by any other person than the Mr. Drew who was then present not to pay it. The cashier, who was the only witness for the defendant, did not in any way attempt to contradict this testimony.

On November fourteenth the check was paid by plaintiff. On November seventeenth the defendant paid the proceeds to the indorsee. On the eighteenth plaintiff received notice that Benjamin Drew, of Swan, Ga., had not received the check, and was asked to watch indorsement. On December third plaintiff received notice that a duplicate check had been issued, and was warned not to pay original. December eighteenth plaintiff paid duplicate check; and on January 17, 1892, plaintiff was informed by the drawer that it, the plaintiff, had paid both the original and duplicate check.

February 8, 1892, was the date of first notice by plaintiff to defendant of its claim.

*George S. Hastings,* for the appellant.

*Thomas G. Shearman,* for the respondent.

O'BRIEN, J.:

Aside from the question raised by the affirmative defense as to plaintiff's duty of exercising diligence in giving defendant information that the payment was irregular or unauthorized, upon the undisputed facts and the settled principles of law the plaintiff was entitled to a verdict.

As correctly argued by respondent:

The plaintiff was bound to pay any check drawn upon it by the Bank of New Hanover. It is not disputed that it did pay the check to the defendant, that the signature of the payee was a forgery, and

that the defendant indorsed the check. The plaintiff was, therefore, entitled to recover the amount from the defendant, on the familiar principle that an indorser of commercial paper impliedly warrants the genuineness of the instrument, and of every preceding indorsement. (*Canal Bank* v. *Bank of Albany*, 1 Hill, 287; *Turnbull* v. *Bowyer*, 40 N. Y. 456; *White* v. *Continental Nat. Bank*, 64 id. 316, 320; *Corn Exchange Bank* v. *Nassau Bank*, 91 id. 74.)

That the forgery was committed by a person having the same name as the genuine payee makes no difference. It is the signature of the genuine person that transfers the title; the mere fact that another person may have the same name gives him no power to make the transfer, and the signature of such person is just as much a forgery as if the names had been different. (*Graves* v. *American Exchange Bank*, 17 N. Y. 205; *Faris* v. *Peck*, 10 Abb. [N. S.] 55; Penal Code, § 522.)

Appellant insists, however, that this rule of law is varied by the fact which it is claimed here appears, that the plaintiff was wanting in the duty which it owed to the defendant of exercising diligence in giving notice after knowledge of the diversion of the check, and also in discovering it. And a quotation to support the proposition thus advanced is taken from an opinion of the presiding justice of this court wherein he says: "The parties were bound to proceed diligently after discovering the fraud, but no *laches* can be imputed prior to its discovery." (*Central Nat. Bank* v. *North River Bank*, 44 Hun, 116.)

We have no fault to find with this statement of the law, nor with an equally well-settled principle invoked by the appellant, to be found in the opinion of RAPALLO, J., in *Nat. Bank of Commerce* v. *Nat. Banking Assn. of N. Y.* (55 N. Y. 216), wherein he says: "If the defendant had shown that it has suffered loss in consequence of the mistake committed by the plaintiff, as, for instance, if in consequence of the recognition by the plaintiff of the check in question, * * * then clearly to the extent of the loss thus sustained the plaintiff should be responsible."

These cases are authority for the position that, though the plaintiff would otherwise be entitled to recover where it has paid a check to the defendant, which by the latter was presented to it through

its correspondent, having thereon the signature of the payee forged, nevertheless no recovery could be had if the conduct and acts of the plaintiff were such as to amount to an equitable estoppel. Such estoppel, it is claimed, exists in this case by reason of the plaintiff's negligence. But we think that in this the appellant overlooks the essential element of an equitable estoppel, in failing to produce the evidence from which (assuming that in some aspects negligence might be imputed to the plaintiff) the inference might be reasonably and fairly deduced that it has, by reason of such negligence, been injured.

It will be noticed in examining the cases relied upon by appellant that they all hold that money paid by mistake can be recovered, provided the one seeking to recover has not by his careless or negligent acts injured or prejudiced the person from whom the recovery is sought.

There is no claim that there was any negligence on the part of plaintiff in paying the check when presented, or that it was wanting in any duty that it owed to the defendant up to the time when the latter paid the money to the wrong person. The insistence, however, is, that having received notice on November eighteenth, which was four days after the check had been paid by plaintiff, and one day after the defendant had paid to the indorsee, this was negligence which should prevent a recovery by plaintiff. The difficulty with this position, however, is, that when the defendant paid the money over to the wrong person the harm was done, and the only evidence of any injury caused by the alleged delay of plaintiff was given by the defendant's cashier, who said that if more seasonable notice had been given the forger "would have been arrested earlier and more favorable results might have arisen." Estoppels, however, are never based upon conjectures, the law requiring that facts must be presented showing substantial damages sustained by the delay. As said in *White* v. *Continental Bank* (64 N. Y. 316): "In the case at bar it is the merest conjecture, with scarcely a possibility to support it, that the defendant, or those from whom it received the bill, could, at any time after the transmission of the foreign bill of exchange to Baltimore, have taken any effectual measures, either for arresting the swindler or reclaiming the bill bought and paid for upon the credit of the bill. Estoppels cannot be based upon mere

conjectures, even if a proper foundation is laid for them in other respects."

Although as early as December third the Bank of New Hanover had notified the plaintiff that the check had not been received by the payee, and although plaintiff had then paid the check, that the plaintiff did not know of the forgery is evidenced by the fact appearing that as late as December 18, 1891, it paid the duplicate check. It is certain, therefore, that it had no actual knowledge until the latter day, and the most that could be claimed from the notice that it received is that it was negligent in not having discovered the forgery sooner.

But this claim of negligence is offset by the facts appearing, that the plaintiff was paying three or four thousand checks a day, which, between November thirteenth and December third or December eighteenth would make many thousand checks which it had paid, and in the business connected with this mass of checks the plaintiff could not well be held to have been guilty of negligence in not having discovered the payment of the forged check at the time the second check was presented.

As the defendant, however, chose to make the payment to a person who was not the payee, it alone is responsible for the loss, and it cannot get rid of such liability by showing that after the loss had occurred there was negligence on the part of the plaintiff in discovering the forgery, or, after it had discovered it, in giving notice to the defendant, unless, in the latter contingency, it was coupled with proof that the defendant was damaged by the failure to give notice within a reasonable time after discovery. For this proposition we refer to the two cases of *Nat. Bank of Commerce* v. *Mechanics' Bank* (55 N. Y. 211) and *Corn Exchange Bank* v. *Nassau Bank* (91 id. 74).

But apart from this the fact that we have already averted to, that it does not appear that by such delay the defendant was damaged, is a complete answer to the defense thus sought to be interposed. As correctly said in *Bank of Commerce* v. *Union Bank* (3 N. Y. 236), "The greater negligence in a case of this kind is chargeable on the party who received the bill from the perpetrator of the forgery. So far as respects the genuineness of the bill, each indorsee receives it on the credit of the previous indorsers, and it

was the interest and the duty in the present case of the Bank of Charleston (for which in the case at bar substitute the defendant) to satisfy itself that the bill was genuine or that its immediate indorser was able to respond in case the bill should prove to be spurious." This is followed by what we regard as a very clear expression of the law: "The party who fraudulently passed the bill cannot avoid his liability to refund on the pretence of delay in detecting the forgery or in giving notice of it, and if reasonable diligence is exercised in giving notice after the forgery comes to light it is all that any of the parties can require."

But a claim of negligence based upon a failure to discover is very different from one based upon a failure, after discovery, to give notice. A failure to discover, though resulting in loss to another who might, if sooner apprised, have apprehended the forger and recovered the money, gives no right of action, and for obvious reasons, one of which alone need be mentioned. There is no duty imposed on one who receives a forged check from another to unearth the crime. He receives it presuming, as he has a right to do, that all the signatures and indorsements are genuine, which is impliedly warranted by the person from whom it is received. This presumption and the right to rely on this implied warranty is only destroyed when, by inspection, the forgery could be detected because apparent on the face of the check or bill, or where, from the surrounding circumstances, the suspicions of the person receiving the note, check or bill should be aroused and his scrutiny challenged.

Not so after discovery, for then the duty is incumbent on the one detecting the imposition to act promptly in giving notice, and if he fails therein to the injury and damage of the one entitled to notice, he will be prevented from recovering the damage or injury shown to have been actually incurred.

Upon the facts here negligence is not imputed to plaintiff for failure to sooner discover the forgery, and as it was not shown that any injury or damage resulted from the delay in giving notice after discovery, plaintiff was not precluded from recovering the whole amount paid to defendant by mistake.

Upon an examination, therefore, of the entire record we think there was no disputed question of fact, nor any fact from which

·different inferences could reasonably be deduced, which would in any way affect the liability incurred by the defendant in paying to the wrong person, upon a forged indorsement, moneys which by mistake it had received from the plaintiff, and which the latter was ·entitled to recover from it.

The judgment, therefore, should be affirmed, with costs.

VAN BRUNT, P. J., and FOLLETT, J., concurred.

Judgment affirmed, with costs.