412

COLMAN BECKER, Plaintiff, *v.* BRONX COUNTY TRUST COMPANY, Defendant.

City Court of New York, New York County, November 25, 1930.

*Louis W. Dinkelspiel,* for the plaintiff.

*Goldwater & Flynn [J. D. Jones* of counsel], for the defendant.

ALEXANDER FINELITE, Official Referee. This action was referred to me as official referee to hear and determine. On the 25th day of November, 1929, the parties and their counsel appeared before me. Many hearings were held, and the record presents 584 pages of testimony and 68 exhibits which were received in evidence.

It appears from the pleadings that the action was brought by the plaintiff to recover from the defendant the sum of $2,371.33 for money had and received; that the plaintiff was a depositor in the defendant bank for several years; that from time to time the plaintiff made deposits in the defendant bank, and on the 11th day of December, 1928, there was a balance to the credit of plaintiff in the sum of

$2,371.33, which the plaintiff demanded and the defendant refused to pay. The defendant by its answer admits the plaintiff's complaint, and asserts four separate defenses and two counterclaims to the effect that the plaintiff deposited with the defendant certain checks of the city of New York drawn on the defendant bank and received credit therefor; that the plaintiff also cashed at the defendant bank certain checks of the city of New York drawn on the defendant bank; that the plaintiff also cashed at the defendant bank certain checks of the city of New York drawn on the Central Mercantile Bank, and also deposited certain other checks of the city of New York drawn upon the Central Mercantile Bank and received credit therefor; that all these checks were issued in a fraudulent scheme to defraud the city of New York, and as all the checks bore the indorsement of the plaintiff the defendant claims the plaintiff thereby warranted the genuineness of all prior indorsements and prays that the complaint be dismissed and that the defendant have judgment against the plaintiff for the sum of $13,973.13.

The litigation arose out of the padding of the payrolls by two city employees of the street cleaning department in the borough of Bronx, fourth district, during the years 1925 to 1928. The scheme in substance was as follows: Stoeber, the assistant foreman in the Cromwell avenue garage, would fill in the weekly payroll with fictitious names, and on the receipt of the checks from the city of New York would turn them over to one Lougheed, the manager of the garage. The checks would then be signed for on the payroll, and the payee's name would be written on the back of the check by either Stoeber or Lougheed, and the defendant claims that the checks involved in this litigation were put in circulation by Lougheed through one Zankel, a brother-in-law of the plaintiff, who it is claimed was also an employee of the city of New York; that 244 checks totalling $2,371.34 were drawn on the defendant bank, which was a depositary of the city of New York, 238 of which were deposited in or cashed by the defendant bank; that 465 checks totalling $12,386.57 were drawn on the Central Mercantile Bank, also a depositary of the city of New York, 446 of which were deposited in the defendant bank or were cashed. There is no evidence in the case showing that the defendant bank has been sued by the city of New York for recoupment, or that the city of New York has recovered any money from the defendant bank as a result of the fraud, but it is claimed that the city of New York has threatened suit. The defendant's exposition of the law governing the case is in accord with the authorities.

It is clear that where a check is made payable to a fictitious person,

not known to the maker to be such, it is not a check to " bearer " passing upon delivery, and the transferee thereof, under a forged indorsement of the name of the fictitious payee, cannot enforce payment, and, if he does collect from the drawee bank, upon discovery of the forgery he becomes liable for the amount of the check. (*Conners C. Co., Inc.*, v. *Mfrs. & T. Nat. Bank*, 124 Misc. 584; affd., 214 App. Div. 811; *Eagan* v. *Garfield Nat. Bank*, 118 Misc. 76; *United Cigar Stores Co.* v. *American Raw Silk Co., Inc.*, 184 App. Div. 217; affd., 229 N. Y. 532; *Shipman* v. *Bank S. N. Y.*, 126 id. 318; *Seaboard Nat. Bank* v. *Bank of America*, 193 id. 26.) The depositor is liable on all checks deposited, irrespective of whether they were indorsed. (*Leather Manf. Bank* v. *Merchants' Bank*, 128 U. S. 26; *White* v. *Continental Nat. Bank*, 64 N. Y. 316; *Kleinman* v. *Chase Nat. Bank*, 124 Misc. 173; *Stein* v. *Empire Trust Co.*, 148 App. Div. 850.) The indorser is liable on all checks indorsed by him. (Neg. Inst. Law, § 116; *Kleinman* v. *Chase Nat. Bank, supra; Oriental Bank* v. *Gallo*, 112 App. Div. 360; *Leather Manf. Bank* v. *Merchants Bank, supra.*) It follows, therefore, that immediately the forgeries were discovered the bank could charge the account of the depositor with the amount of all forged checks whether deposited to his account or indorsed by him, and maintain an action to recover any balance due to the bank without making a demand upon the depositor.

Defendant relies on the testimony of Stoeber and Lougheed to establish the elements of the fraud whereby it has been victimized. The evidence presents no doubt that Stoeber and Lougheed entered into a scheme to defraud the city of New York in the manner above recited. Both of these individuals have confessed their participation in the crime, both were indicted, tried and sentenced to the State prison as felons, and have now been released from custody. I am unwilling to accept their testimony without corroboration. It is not claimed by the defendant nor does the proof show that the plaintiff was *particeps criminis.*

By inference the defendant undertook to show that some of the checks involved in this litigation were put in circulation by one Charles Zankel, a brother-in-law of the plaintiff, but Zankel was not produced as a witness. The method employed by the defendant to establish liability on the part of the plaintiff was to have Stoeber or Lougheed indicate on the payrolls the fictitious names; then a great mass of checks was produced, and an effort made by the defendant to tie up the checks bearing similar names with the fictitious names appearing on the payrolls, and then undertaking to show that such checks bore the indorsement of the plaintiff. Stoeber and Lougheed without much consideration would call off

hundreds of names from the payrolls and claim they were fictitious and represented the names of no employees in the service of the city of New York. In a number of instances, however, such claimed fictitious names were subsequently shown to be names of *bona fide* employees of the city of New York. In presenting the evidence the defendant did not deal with one check at a time, but presented many bundles containing many checks and many payrolls containing many claimed fictitious names, and endeavored in this way to prove its case *en masse*, a method which did not appeal to me, as I from time to time expressed during the course of the hearings. The plaintiff was the proprietor of a stationery and cigar store in the Bronx and has been in business for many years. He became a depositor in the Bronx County Trust Company in about the year 1922. Many of the employees of the city of New York employed in the Cromwell avenue garage of the street cleaning department were his customers, for whom in order to draw their trade he would from time to time cash checks, but at no time did he cash checks for Stoeber or Lougheed. He began cashing checks for city employees in 1921, and he asserts that he never cashed any check for any employee of the street cleaning department who did not have on a street cleaning uniform and a city badge. The plaintiff denied the indorsement on a great volume of checks produced, and contradicted the testimony of Stoeber and Lougheed in many details. There can be no doubt that the defendant has a cause of action growing out of the fraud practiced by Stoeber and Lougheed, but in this action it has failed in its proof to fasten liability on the plaintiff.

Therefore, the defendant having admitted the plaintiff's claim, I find in favor of the plaintiff in the sum of $2,371.33, with interest thereon from the 11th day of December, 1928, together with costs and the disbursements necessarily made in this action, and dismiss the counterclaims of the defendant for failure of proof, and not on the merits, without prejudice to the defendant beginning an action for the amount of its claim. The plaintiff and the defendant may submit their requests to find and conclusions of law within ten days from the date of this decision.