Daniels, J.
The judgment has been recovered for damages for the conversion, by the Wall Street Bank, of which the defendant is the receiver, of 250 shares of the capital stock of the Youghiogheny River Coal Company and 105 shares of the capital stock of the American Printing Company, of Fall River, Massachusetts, of the par value of $100 each. The plaintiffs were stock brokers, carrying on business in the city of New York, and had dealings in that business with W. J. Hutchinson, who was the owner of these shares of stock. He hypothecated the shares with the plaintiffs by way of security for his indebtedness to them, and they transferred them to the Wall Street Bank to secure a loan made by the bank to the plaintiffs, amounting to the sum of $30,000. They afterwards paid upon the loan, at the request of the bank, the sum of $10,000. This payment was made on or about the 16th of May, 1884, and, at the time of making it, the plaintiff, William H. M. Sistare, testified that he was informed by the cashier of the bank that he had previously delivered the 250 shares of the Youghiogheny coal stock to Hutchinson. From that act' this witness testified that he in very plain terms dissented and condemned it as unauthorized and unlawful, and the cashier promised to obtain and replace the stock. In about a month after that his statement is that the bank failed, and then he obtained the sum of $20,000 and went to the *250 bank with the money to pay the loan and receive back these secureties. At the banking office he states that he had an interview with the president of the bank and informed him that he was there to pay the loan and interest and to demand and receive the securities; that the president of the bank replied that they could not give up the securities, that there was nothing there except an empty envelope, referring to the envelope in which the securities had been placed in the possession and custody of the bank. The witness testified that he then said: “You don’t mean to say you cannot give me anything of all this property ? He said we cannot give you anything. There is nothing here at all but an empty envelope which we found in Mr. Dickenson’s desk.”
This Mr. Dickenson was the cashier of the bank, who proved to be a defaulter, and had previous to this interview absconded. Upon this evidence, which was credited by the referee, he found a conversion of the shares of stock by the bank. And he was supported in that conclusion by the facts, that in effect a formal tender of the money was dispensed with, and the only ground stated for not taking the money and delivering up the securities was that the stock had disappeared. If these facts had not been disclosed in this manner, and the stock had remained in the possession of the bank, then a formal tender of the money in payment of the debt would have been a necessity. But, as the facts appear to be, that formality was excused, and enough was presented, without resorting to it, to establish the conclusion that the stock had been wrongfully converted by the bank. Blewett v. Baker, 58 N. Y., 611; Hayner v. Am. Pop. Ins. Co., 69 id., 435; Wilson v. Little, 2 Com., 443, 449; Lawrence v. Miller, 86 N. Y., 131.
The evidence given to present this state of facts was received without objection, and upon this appeal, it is too late for the defendant to make the objection that it should not have been admitted under the complaint, which alleged a tender to the bank of the full amount and interest due to it on the loan which it had made. Such an objection cannot for the first time be brought into the case upon the hearing of an appeal, or after judgment. Tyng v. Com. Warehouse Co., 58 N. Y., 308, 313.
There was no more than a variance between the allegation of the complaint and the evidence, in any view which can be taken of it. And if the objection had been presented to the referee, he might, under the liberal provisions of the Code relating to this subject, have allowed the complaint to be corrected, by inserting in it a statement of the facts as they were testified to have occurred. As the evidence was made to appear, and was adopted and followed *251 by the referee, a conversion of the shares of stock was proved and established on the trial.
As to the 250 shares delivered by the cashier to Hutchinson, the further position has been taken that the plaintiffs were estopped from claiming anything against the bank or its receiver, for the reason that the shares had been sold by Hutchinson, who paid $10,000 of their proceeds to the bank and $10,000 to the plaintiffs in the suit. But the testimony of the plaintiff, who was sworn upon the trial, was that while $10,000 had been received from Hutchinson, it was not paid to the plaintiffs as the proceeds of these shares, but was paid to them as so much money to be applied generally, and that it was so applied by them upon the account they had against Hutchinson. His evidence controverted this statement. He testified that with the check which was sent for the $10,000 a statement or memorandum was added, showing the money to be the proceeds of the sale of these shares of stock. But the plaintiff, who gave his evidence upon the trial, and is stated to have had the management of the business, positively denied having received this memorandum, or to have in any form been apprised of the fact that the money was derived from the shares, and intended to be paid over to the plaintiffs as part of their proceeds.
The evidence concerning this feature of the case was in direct conflict, and it was for the referee, having the witnesses giving the conflicting statements before him and hearing their testimony, observing their appearance, and considering all the probabilities of the controversy, to decide to which side credit should be given, and his decision upon such a conflict is conclusive upon the court to which an appeal may be taken. Without a clear preponderance of evidence against the conclusion of the referee, the court is not at liberty to interpose and set aside his conclusion based upon such a condition of the proof. Sherwood v. Hauser, 94 N. Y., 626.
Neither of the plaintiffs disclosed to any officer of the bank the interview which is stated to have taken place with Dickenson, its cashier, at the time when the $10,000 was paid to the bank. And on the omission to make the disclosure, the position has been taken in behalf of the defendant that the plaintiffs were estopped from after-wards complaining of the delivery of the 250 shares to Hutchinson without their authority and the sale of these shares by him.
But the witness testifying to this interview, while he says he denounced the delivery of the shares of Hutchinson in very strong terms, and stated that he would put the matter in the hands of his counsel and proceed at once *252 against the bank to recover the property, was requested by the cashier not to act hastily, for as soon as hé he could get hold of Hutchinson, he would have that stock returned. And the testimony; of the witness is that he took no action concerning the delivery and disposition of this stock on the assurance given to him by the cashier. This was a reasonable excuse for omitting to take the proceedings which were threatened, or to advise the bank of the misconduct of its cashier, in the delivery of the shares. At least that view was not an unreasonable one to be taken and adopted by the referee. And upon that construction of the effect of what had transpired there was no ground of estoppel under the just and liberal rules laid down in Continental N. Bank v. National Bank, etc. (50 N. Y., 575). The conduct of this plaintiff as he described it was in no respect unfair or unreasonable, for he had no notice of the fact that Dickenson was a defaulter in his official dealings with the bank, or that there was the least reason for apprehending that he was about to abscond.
The defendant, by way of further defense under a supplemental answer proposed to give in evidence the complaint in an action brought by the plaintiffs against Hutchinson and his wife; and, also, an affidavit made in the action on which an attachment was obtained and under which the sheriff attached real estate standing in the name of Hutchinson’s wife, and an agreement made between the plaintiffs and the defendants in that action by which it was settled and adjusted. This evidence was objected to on behalf of the plaintiffs and it was rejected by the referee, to whose decision an exception was taken by the defendant. In support of this objection the decision made in the case of Sistare v. Olcott, upon a previous appeal and reported in (7 N. Y. State Rep., 470), has been relied upon.
And it has been insisted by the counsel for the defendant that the propriety of receiving the offered evidence met the approbation of the court in making this preceding decision. But the case contains no warrant whatever for this construction of it. No question indeed, arose concerning this evidence, but upon the testimony, as it was included in the case, it was held to present a question of fact to be submitted to and decided by the jury. And as a verdict had been directed instead of submitting it in this manner, the judgment was reversed and a new trial ordered. The decision accordingly in no manner affects the ruling of the referee in the exclusion of this evidence. The proceedings in the action, if the complaint, affidavit and attachment had been received, would have afforded no legal assistance to the defendant, for the action was brought for an alleged fraudulent conspiracy between Hutchinson and his wife through *253 which large amounts of money were obtained from the plaintiffs, leaving a balance remaining unpaid amounting to $88,716.11, And it was for the recovery of this balance that the attachment was obtained and levied upon the property of Mrs. Hutchinson. If the attachment had not been discharged, but the action had proceeded to a trial and judgment in the plaintiff’s favor, no part of the damages sustained by the plaintiffs from the conversion of these 250 shares of stock would have been thereby recovered, for Mrs. Hutchinson in no manner participated in the wrong which was committed, and to that extent formed the foundation of the present action. As she in no way participated in this wrong, her property could not have been appropriated to the satisfaction of the damages thereby created. What she would have been liable for, and all which she would have been liable for, in the action brought against herself and her husband, would be the moneys that through the instrumentality of the fraudulent conspiracy alleged, had been obtained by herself and her husband from the plaintiffs. And the moneys received, or for which the shares of stock were hypothecated, do not appear to form any part of the moneys fraudulently obtained through the alleged conspiracy, from the plaintiffs.
By the agreement which was made, it has been claimed that the right of action presented in this suit was compromised and adj usted by Hutchinson and his wife. If that were the fact, then it would follow that this action could not be maintained against the receiver, for a satisfaction obtained from one of two or more joint wrong-doers, will extinguish the legal right previously existing to proceed against the others. But this was not the agreement which was made. It did not profess to adjust the controversy between these parties arising out of the conversion of the shares of stock; neither did it provide for a full payment or satisfaction of the indebtedness of Hutchinson, or that of himself and wife, without reference to the claim here made against the receiver. What it did provide for was the payment of the sum of $27,500, which was in fact paid by Hutchinson and his wife to the plaintiffs, the release of Hutchinson from an individual liability claimed in another .action, and the payment of the further sum of $10,000, as soon as the plaintiffs should deliver to the attorney of Mrs. Hutchinson the 105 shares of printing stock. It was also declared and provided in the agreement, that it is expressly understood and agreed that this indenture and nothing herein contained shall operate to approve, ratify or acquiesce in any act which the said William J. Hutchinson may have done in interfering with or disposing of any of said securieties while in the custody of said bank (and which in *254 terference and disposition the said William J. Hutchinson denies), or of any other act which he may have done in respect thereto as such director, officer, or in any other relation to the said bank (and which is not admitted by these presents by the parties of the second part).
It being understood that plaintiff’s rights to said securities shall remain altogether unimpaired and unaffected by this-agreement, and that nothing herein contained shall interfere with the rights of the parties of the first part to prosecute their action and to insist upon their rights against said bank as set forth in the complaint in said action. And that excluded the transactions forming the ground of complaint in this suit. And by so excluding them, it is evident that the settlement could legally have no bearing upon the disposition of this action. If the plaintiffs had received satisfaction through it for their alleged cause of action presented by this suit, then the agreement making the adjustment would have been legal evidence. But they not only did not receive such satisfaction, but they excluded the controversy in this, suit from the operation and effect of the agreement, and the settlement made by them. In that state of the facts it seems to be impossible for the defendant to derive any benefit from the adjustment of so much of the controversy which had arisen between the plaintiffs and Mr. and Mrs. Hutchinson, as was settled by this agreement. The evidence, while it might very well have been received by the referee, would have been of no advantage to the defendant, and there was no error in sustaining the objection made and allowed in behalf of the plaintiffs.
The evidence to prove the value of the shares upon which the referee, in part at least, based his estimate for the damages allowed, has been urged to have been improperly received, and not to have been legally attended with the effect which was given to it. ■ But by the witness, whose statements were credited by the referee, it appears that these shares were not the subject of traffic and sale so much as they were that of permanent investment, and that the shares-of the Coal Company had paid a dividend of seven per cent, and the printing house shares a dividend of ten per cent. On those facts, as the plaintiff who was examined as a witness, was engaged in the business and dealings in stocks, it was not erroneous for the referee to receive his judgment of the value of these shares. In fact the value of shares of stock not dealt in, but held as investments can be proved practically in no other manner. And persons experienced in the business may be allowed to express their judgment concerning the value of stocks not made the subject of barter and selling, but yielding regular dividends. The referee did not follow the judgment of the witness exclusively, but he modified it to meet the valuation put upon the shares at the time when they were received by the bank in accordance with the judgment and direction of its cashier. He *255 professed to be familiar with their value, and by an indorsement stated to have been made on the envelope under his direction, the total value of the shares was stated to be the sum of $38,900. And in the instrument delivered to and received by the bank from the plaintiffs, with the shares, the market value was stated to be the sum of $39,150. While the evidence was not very extended as to the value, it was still sufficient for the action of the referee, and supports the conclusion which he derived from it.
The plaintiffs were not excluded from the right to recover the value of the shares by the fact that the authority had been given to the bank to sell them without notice for the reimbursement of its loan. For the 250 shares were not sold by the bank at all, but they were without authority, as the facts have been found, delivered to Hutchinson for his own disposal, which in and of itself was a conversion of these shares. The fact that Hutchinson afterwards sold them for the price of eighty per cent, can, in no manner, relieve the liability of the bank to make satisfaction for what was the market value of the shares at the time when they were unlawfully parted with by it. Upon this part of the case no error appears to have arisen in the decisions or final conclusion of the referee.
Exception was taken to the decision of the referee allowing a question to be asked as to what the witnes, Sistare, did in consequence of what had been said to him, but this exception is evidently without any merit, for the facts themselves indicated what he did as fully as the answer could after it had been received. The same witness was asked as to what valuation he put upon the shares at the time when he delivered the envelope to the bank, and in answering the question he stated that the valuation put upon it was placed there at Mr. Dickenson’s request, who named the prices. This latter part of the answer was not responsive to the question, and the defendant’s counsel moved to strike it out, which the referee denied. But no prejudice resulted from this denial of the defendant’s motion, for the witness after-wards stated what had transpired between himself and the cashier upon this subject. In fact, neither these nor the other exceptions which have been taken to rulings concerning evidence received or excluded, seem to have any foundation for their support. There is no reason for interfering with the conclusions of the referee, and the judgment appealed from should be affirmed.
Brady, J., concurs.