THOMAS ADAMS & COMPANY (LIMITED), Appellant, *v.* NICHOLAS ALBERT and Others, Respondents.

*Loan to a partnership — knowledge of misrepresentations, essential to an estoppel — confession of judgment in favor of a creditor without his knowledge.*

Where a person who had been a partner in a firm loans money to its successor, he cannot be affected by representations made upon the part of the new firm that the loan constitutes a part of its capital, unless knowledge of such representations comes to him.

Where a son is justly indebted to his father for a loan, made to the son, but for the benefit of a firm in which the son is a partner, the fact that the son, without the father's knowledge, confesses judgment in favor of the father, does not in itself indicate fraud on the part of the father, and the father may stand on rights acquired upon an execution issued upon such a judgment.

APPEAL by the plaintiff, Thomas Adams & Company (Limited), from a judgment of the Supreme Court in favor of the defendant Nicholas Albert, entered in the office of the clerk of the county of New York on the 18th day of February, 1895, upon the decision of the court rendered after a trial at the New York Special Term.

*W. W. MacFarland*, for the appellant.

*James L. Bishop*, for respondent Nicholas Albert.

PARKER, J. :

This is a suit in equity brought to procure an adjudication that a judgment recovered by the plaintiff against the defendant Henry C. Albert, December 29, 1893, for the sum of $39,480.32, and the levy and execution thereunder, be declared to be a lien upon certain goods belonging to the defendant Henry C. Albert, prior and superior to the judgment, execution and levy of the defendant Nicholas Albert, recovered December 23, 1893, for $51,445.

To prevent a sacrifice, incident to a sale of the goods at public auction, an agreement was entered into by which the goods were sold in the usual way, and the proceeds deposited in the Farmers' Loan and Trust Company, such proceeds to be treated as a substitute for the goods, for the purpose of determining the rights of the parties.

The claim of the plaintiff upon the trial was and now is :

(1) That the sum for which Nicholas Albert obtained judgment was in fact part of the capital of the firm, and, therefore, subject to a lien in favor of firm creditors.

(2) That if it were not a part of the capital Nicholas Albert is estopped from asserting that it was not.

(3). That the evidence establishes a trust in favor of the plaintiff, arising *ex maleficio*, and an equitable lien in favor of the plaintiff superior to any right of Nicholas Albert.

Nicholas Albert came to this country in 1854. In 1867 he became a partner in the firm of Oscar De Lisle & Co. In December, 1872, that firm was dissolved, and a new partnership was formed to carry on the business, consisting of all the members of the old firm except De Lisle, and the firm name was changed to Albert, Haager & Walburger. During the existence of this firm Nicholas Albert resided in St. Gall, Switzerland, his duties as a member of the firm consisting in the purchase of goods to be shipped to New York for sale. That firm was dissolved December 31, 1885. The day following a new firm was organized, the members being Haager, Walburger and Henry C. Albert, a son of Nicholas. Nicholas Albert's capital in the firm at the time of the dissolution was $115,385.96. Of that amount he loaned $50,000 to his son, to be employed in the business of the firm as Henry C.'s contribution to the firm's capital.

Of the rest of his capital he left $50,000 with the firm. The plaintiff says he left it as a part of the capital, while the defendant Nicholas Albert insists that it was a loan to the firm. Thereafter he received thereon from the firm interest at the rate of five per cent for three years, and afterwards at the rate of six per cent.

From time to time, as he needed it, he drew certain amounts from the firm, with the result that at the day of the entry of the judgment, December 23, 1893, there remained unpaid of the original capital, plus a small amount of interest, over $51,000.

The learned judge at Special Term reached the conclusion that the only part of Nicholas Albert's capital which found its way into the capital of the new firm was the sum of $50,000 which Nicholas loaned to his son Henry C., in order to enable him to contribute towards the capital of the firm the sum agreed upon between him and his partners, the residue being a loan to the firm. The rule

which should govern this court in reviewing findings of fact of a trial court clearly protects this finding from reversal. But we also think it should be said that, while there is evidence tending to support a contrary inference, after a careful examination of it we have reached the conclusion that the proper inference of fact was drawn. But, in view of the very full discussion had at Special Term, we do not feel justified in doing more than record our approval of the decision in such respect.

The next question is, whether Nicholas Albert was estopped from asserting that the $50,000 for which he recovered judgment was not capital? Under this head two grounds of estoppel are assigned by the plaintiff. In the first place, it invokes the rule that where a man holds himself out as a partner, or allows others to do it, he is thereby properly estopped from denying the character of that which he has assumed, and upon the faith of which creditors may be presumed to have acted.

The appellant also quotes from Parsons on Partnership, 495, the following: "If, therefore, this person, instead of permitting himself to be held out as a partner, permits his property to be held out as the property of the firm, and as forming a part of the foundation on which its credit rests, the very same reason which held him personally in the first case, with all his property, would now hold that part of his property so permitted to appear as the property of the firm."

The word permitted is used by the learned author in the sense of allowed, suffered or acquiesced in. If a person loans money to a firm he of course cannot be affected by the representations of that firm to the effect that such loan constitutes a part of the capital of the firm if knowledge of such representations does not come to him.

Aside from a conversation had with a representative of the plaintiff, Mr. Carver, to which reference will be made under the second head, we are unable to find any evidence in this record that Nicholas Albert knew, or had reason to believe, that the money due to him was held out by any one as constituting a part of the property or capital of the firm. He never saw the books of the new firm of which his son was a member, and it appears from his testimony, which is uncontradicted in such respect, that he never asked for an

account or statement of the business of the firm and never received one. Nowhere in this record can we find any evidence pointing in the direction of either knowledge or suspicion on the part of Nicholas Albert that the $50,000 which he says he loaned to the firm was held out by them, or any one of them, as a part of the capital of the firm.

The appellant further insists that the representations made by Nicholas Albert to a representative of the defendant about the 15th of July, 1891, upon which plaintiff relied and subsequently acted, brings into operation another rule of estoppel, to wit, that where a man makes a representation to another which he intends shall affect his action, and the representations are of such a character as a man would take to be true and he believes that it was intended that he should act upon it, and does so act, the party making the representations is precluded from contesting their truth. (*Continental Nat. Bank* v. *National Bank, etc.*, 50 N. Y. 575.)

About the 15th of July, 1891, the firm of Albert & Haager was indebted to this plaintiff in the sum of about $45,000 for goods sold and delivered to it. A Mr. Carver, the manager of the plaintiff, called upon Mr. Henry C. Albert, who was at that time at St. Gall, Switzerland, for some assurances touching the condition of the affairs of the firm of which he was a member. Later in the day he called upon Mr. Nicholas Albert at his residence, and had an interview with him in the presence of Henry C. Albert. The court finds that the statement made to Mr. Carver by Nicholas Albert at that interview was as follows: "You need not have any fear at all. That is all right. Your firm wont lose anything, because as much as I know, the business over there is good, and I have over $100,000 capital in the business; $50,000 as a loan to my son, and the remaining part to the firm, so you need not be afraid at all; that is all right." Had Nicholas Albert concluded his representations with the statement "I have over $100,000 capital in the business," it might be urged that it was reasonable for Mr. Carver to have inferred from that statement that Nicholas had $100,000 in the capital of the firm, but that phrase constituted only a part of a sentence, which, when completed, makes it entirely clear that he intended to give no such assurances, but, on the contrary, intended that Mr. Carver should understand what the fact was, to wit, that $100,000

of his original capital was employed in the business, $50,000 of it having become the capital of his son, and the other $50,000 being loaned to the firm. This expresses the exact situation and was not calculated to mislead an ordinarily prudent man. As to so much of the statement as we have quoted, there is no substantial dispute, but Carver claims that Nicholas Albert further said that in the event of the non-renewal of the contract of partnership between Haager and his son, which was to expire by limitation on the thirty-first of December following, his money would not be withdrawn until plaintiff's claim should be paid, and that it was understood between the parties at that interview that Nicholas Albert's statement should be reduced to writing and presented to Carver, which Carver says was done. Nicholas Albert positively denies that at that conversation any such assurances as that were given, or that there was any understanding that the conversation should be reduced to writing, and further that he never heard of the existence of any such writing until after the commencement of this action.

The judge, at Special Term, credited this statement, and we see no reason to differ with him. The son did write and deliver to Mr. Carver a statement which reads as follows :

"ST. GALL, *July* 15*th*, '91.

" Mr. CARVER :

" DEAR SIR — Referring to our conversation of to-day, and wishing to set your mind entirely at ease conc'g our indebtedness to your firm, I wish to say that my father has a capital of about one hundred thousand dollars in the business, half of which is at the bus. risk and balance loaned to me, and that in the event of non-renewal of contract between Mr. Haager and myself, you can rest assured of being paid in full before withdrawal of said capital.

" Sincerely yours,

" H. C. ALBERT."

It will be observed that this statement purports on its face only to be an assurance of Henry C. Albert on his own behalf. It refers to a conversation had with Mr. Carver on that day, and it appears beyond controversy that he did have a conversation with Carver prior to the meeting between Carver, his father and himself. The form of the statement, the fact of the previous interview between

Henry C. Albert and Carver, the testimony of Henry C. Albert that it was written by him and delivered to Carver before the meeting of the three at Nicholas Albert's house, and the circumstances attending its writing, together with the testimony of Nicholas Albert that he never authorized any such statement and did not know of it until after the commencement of this action, were sufficient to justify the trial court in believing as it did that Nicholas Albert was not a party to the statement in any manner whatever.

That being so, it is entirely unnecessary to consider how the statement would have affected the rights of the parties had it been made upon the authority of Nicholas Albert.

We shall not discuss the proposition that the fund in question is subject to a trust in favor of the plaintiff arising *ex maleficio*, further than to say that there is no substantial basis for it in the evidence. The $45,000 which was owing the plaintiff by the firm of Albert & Haager, in July, 1891, was paid, but other indebtedness was contracted from time to time during the year and a half following by the firm of Albert & Haager, or Albert individually, so that there was due plaintiff, at the time it obtained judgment in December, 1893, something over $30,000. But there was no fraudulent conduct on the part of Nicholas Albert; he trusted his son fully down to the last moment; the $50,000 which Nicholas loaned him to put in the business has disappeared in losses; it is not pretended that he has even received any part of the $100,000, of which half was loaned to the firm and half to the son, or that it is possible for him to receive anything on account of that indebtedness other than the money in the Farmers' Loan and Trust Company, which is the subject of this controversy.

It is true that the son confessed judgment in favor of his father without his father's having knowledge that he intended doing so, or that there was any occasion for it; but surely that does not tend to show wrongdoing on the part of Nicholas Albert; and we find nothing in the record which indicates to us that he intended at any time to deceive or wrong any one, or that he had any suspicion even that the business was insolvent. Finding a judgment in his favor for a debt lawfully due, an execution issued thereon and a levy thereunder, he stands upon the rights thus acquired to secure to him the little that is left of what he once regarded as a substantial fortune.

This he may do if he chooses, inasmuch as it does not appear that his judgment debtor confessed the judgment as a part of a fraudulent scheme to cheat and defraud his creditors, or that the father was guilty of any act which in equity should deprive him of the rights of an ordinary judgment creditor.

The judgment should be affirmed, with costs.

VAN BRUNT, P. J., and FOLLETT, J., concurred.

Judgment affirmed, with costs.