EDISON ELECTRIC LIGHT CO. et al. v. BUCKEYE ELECTRIC CO. et al.

(Circuit Court, N. D. Ohio, E. D. January 23, 1894.)

No. 5,142.

1. PATENTS — ATTEMPTED CORRECTION — LIMITING TO EXPIRE WITH FOREIGN PATENTS—ESTOPPEL.
    The voluntary act of a patentee in causing his patent to be amended after issuance so as to be limited to expire with a foreign patent secured

by him, even though taken under the mistaken view that the law required such limitation to appear on the face of the patent, estops him, as against one who invested money in a manufacturing plant on the faith of his action, from claiming that the amendment was invalid and of no effect, or from relying upon a subsequent annulment of the amendment secured by him only a short time before the amended patent would have expired.

2. SAME—NOTICE.

Where the petition for correction, in such case, states that, while the inventor's American application was pending, "he applied for and obtained" letters patent for the same invention in several foreign countries,— enumerating such patents, with their dates,—and prays that the American patent may be amended so as to be limited to expire with the expiration of that one of them having the shortest time to run, the petition does not, by reason of the indefiniteness of this language, put the public upon investigation as to the laws of the various countries, so as to affect them with notice that the British patent, which was the one first expiring, did not begin to run on the day of its date, but upon the day of its sealing and issuance.

3. SAME—PRELIMINARY INJUNCTION—DISSOLUTION—WHEN GRANTED.

The burden of proof is on defendant to show cause for dissolving a temporary injunction, but nevertheless a dissolution will be granted upon new evidence sufficient to raise grave doubts as to the complainant's right to such injunction.

In Equity. Suit by the Edison Electric Light Company and the Edison General Electric Company against the Buckeye Electric Company and others for infringement of a patent. On motion to dissolve a preliminary injunction. Granted.

Statement by RICKS, District Judge:

This case is now before the court upon a motion to dissolve the preliminary injunction allowed herein on the 28th day of July, 1893. Said injunction enjoined the defendant from using lamps infringing the second claim of letters patent No. 223,898, for the alleged infringement of which the bill of complaint was brought. The motion recites what the record discloses: That the letters patent upon which the bill is filed bear date the 27th day of January, 1880, and purport to be for the full term of 17 years from that date. That after said letters patent were issued, and on or about the 15th day of November, 1883, Thomas A. Edison, to whom said letters patent were granted, filed with the commissioner of patents of the United States a duly-verified petition, wherein, among other things, he alleged that, while his said application for letters patent was pending, he applied for and obtained letters patent for the same invention in several foreign countries, to wit: British patent, dated November 10, 1879, No. 4,576; Canadian patent, dated November 17, 1879, No. 10,654; Belgian patent, dated November 29, 1879, No. 49,884; Italian patent, dated December 6, 1879; and French patent, dated January 20, 1880, No. 133,756. And that no other patents were granted upon his invention in foreign countries before the grant of said United States patent No. 223,898, and at the time of filing said application for said United States patent, and while the said application was so pending, he was advised that the rules and practice of the office, under the prevailing construction of section 4887 of the Revised Statutes of the United States, did not require an applicant to acknowledge, during the pendence of his application, a foreign patent applied for and granted subsequent to the filing of such application, and that he therefore did not acknowledge the above named foreign patents, and that the United States letters patent were granted to him, unlimited, for the full term of 17 years. He, further, in said petition, tendered said letters patent No. 223,898 to the commissioner of patents, and requested that they be corrected so that his said patent should be limited to expire with the date of said foreign patent, referred to in his petition, having the shortest time to run. The said petition of Thomas A. Edison for such

correction of his said patent was duly consented to and concurred in, in writing, by the Edison Electric Light Company, to whom the said Edison had assigned the said letters patent.

The motion further alleges that the United States commissioner of patents, upon the filing and due consideration of said petition for the correction of said patent, granted the said request of the said Thomas A. Edison and the Edison Electric Light Company, and accepted the surrender of said patent for the purpose of such correction, and corrected said letters patent in accordance with the request made in said petition, and indorsed thereon such correction, wherein and whereby said letters patent were, at the election and request of the said complainants, limited so as to expire at the same time with the foreign patent having the shortest time to run, naming said patents as hereinbefore described, and certified that the proper entries and corrections had been made in the files and records, and that the said amendment was made that the United States patent might conform to the provisions of section 4887 of the Revised Statutes. Said motion further avers that "said British patent, No. 4,576, dated November 10, 1879, was for the same invention as that for which the said United States letters patent aforesaid were granted, and as your petitioners are informed, advised, and believe, and therefore allege, was for the term of fourteen years from the said November 10, 1879," and that said British patent, No. 4,576, has now expired.

Said motion further avers: That the defendant, the said the Buckeye Electric Company, was organized for the purpose of manufacturing and selling incandescent lamps in the month of February, 1890. That at the time of its organization it had an authorized capital of $100,000, and its investment at that time was about $25,000. That, before said business enterprise was started and said capital invested, the parties interested in the enterprise made diligent examination of the records of the patent office with reference to patents pertaining to incandescent electric lamps, and also informed themselves as to the prevailing understanding of the trade, and persons engaged in similar enterprises, as to the rights of parties to manufacture incandescent electric lamps notwithstanding said letters patent No. 223,898, and other patents professing to cover the manufacture of incandescent electric lamps at that time, and among other things ascertained that the circuit court of the United States, in a case heard by Mr. Justice Bradley, had decided to be invalid a certain patent upon incandescent lamps, known as the "Sawyer-Mann Patent," which was considered by the trade and all parties interested as being in all respects as valid as the said letters patent No. 223,898, which patent was commented upon and referred to in said case, and that at the time, of said ruling the electrical engineers, and all parties interested throughout the country, accepted that decision as holding that the public generally were free to make, sell, and manufacture incandescent electric lamps in the form now claimed, and subsequently decided to be an infringement of the letters patent in the bill of complaint described. And, prior to the time that said Buckeye Electric Company engaged in the business, there were many other concerns in the United States manufacturing incandescent lamps, among the principal of whom were the Sawyer-Mann Company, of New York City; the Thomson-Houston Company, of Lynn, Mass.; the Bernstein Company, of Boston; the Sunbeam Incandescent Lamp Company, of Chicago; the Perkins Incandescent Lamp Company, of Manchester, Conn.; the Brush-Swan Company, of Cleveland, Ohio; and others. That none of those companies had ever been sued by the owners of the "Edison Patent," so called.

Said motion further avers that the defendants and those interested also ascertained from such investigation that the particular patent in suit in this case was then believed to have expired by reason of the termination of the Canadian patent covering the same invention, issued on November 17, 1879; it being, as was then understood by the petitioners, the prevailing opinion of the courts that the termination of the Canadian patent, by the decision of the deputy commissioner of patents, terminated at the same time as the Edison patent sued upon herein, which had been issued in the United States subsequent to the date of said Canadian patent, and it was the distinct understanding of the defendant at the time said company began business that there was no valid patent outstanding which could in any way

interfere with their carrying on the proposed business of manufacturing and selling incandescent electric lamps. And the defendant, in common with other manufacturers throughout the United States, continued business with its said investment of about $25,000 until the summer of 1891, without molestation or threat of interference by any one claiming the patents were infringed by the defendant. That in the summer of 1891 the defendant, the Buckeye Electric Company, having some months before that time discovered and put into practical use a filament superior in every respect to that which was then and is now used by the complainants herein, and had so far increased its business that it became necessary to largely increase its investment. And thereupon further examination was made by the parties interested in the said Buckeye Electric Company's enterprise as to the patent of the said Thomas A. Edison, and it appeared from the examination which was then made, for the second time, that said letters patent had been, upon the petition of Thomas A. Edison, as hereinbefore described, corrected so that said patent was limited to expire with the aforesaid patents issued by foreign countries having the shortest time to run, and that said patent would expire on the 10th day of November, 1893. That consequently the United States letters patent would expire at the same time. And thereupon, and before any ruling had been made by the circuit court of the United States sustaining the validity of the said Edison patent, and in full reliance on said petition, and with the concurrence and consent of complainants, as hereinbefore set forth, and upon the certificate of the patent as issued and corrected, limiting its term as aforesaid, the said defendants, for the further purpose of introducing its improved and superior filaments, further increased its investment in said electric light business, so that it now has, and since said summer of 1891 has had, invested in said business, and in connection therewith, about the sum of $125,000. The motion avers that said investment was made in good faith, believing that in no event could the United States letters patent of the said Thomas A. Edison continue in force longer than November 10, 1893, which said defendant was induced to believe by the action of the said Edison and his associates as hereinbefore recited.

The motion further avers that after the decision of Judge Wallace, hereinbefore referred to, an appeal was at once taken by the parties to said suit, so that the defendant and others in the same line of business continued to manufacture lamps pending said appeal; that shortly thereafter negotiations were opened between the defendant and complainants with a view of completing some arrangement by which a sale or consolidation of interests could be effected; that these negotiations were carried on constantly from about September, 1892, until February, 1893, during which time the defendants operated their factory, with the acquiescence, and substantially at the request of, said General Electric Company, and materially increased its capacity at the suggestion and request of the said General Electric Company. These negotiations finally failed, and immediately upon such failure the defendant closed its factory, by reason of the ruling of the circuit court of appeals for the second circuit sustaining said claim of the Edison patent, and said factory remained closed until a subsequent decision of Judge Hallet, in the eastern district of Missouri, in a case in which the Goebel defense to the validity of the Edison patent was presented, and the complainants were refused an injunction. Upon such ruling the defendant opened its factory, and continued manufacturing until the decision of Judge Seaman, of Milwaukee, when the defendant again closed its factory; and said motion avers that said defendant has at no time knowingly or willfully infringed complainants' rights.

By reason of the premises, the defendant avers that said United States letters patent No. 223,898, so far as the rights of the defendant to now manufacture lamps is concerned, is no longer in force, said invention having been, by the voluntary act of the owners, as hereinbefore described, dedicated and abandoned to the public, and that by reason of said action the public generally, and especially the defendant, has thus made large investments upon the faith of the expiration of said patent at the date to which its term was so expressly limited by request of the owners thereof, and have now the right to manufacture and use and sell the lamps covered by said patent, and that the complainants, by reason of the acts aforesaid, are es-

topped to claim any benefits under said patent, as against the defendant, since November 10, 1893.

This motion is supported by affidavits of the officers of the defendant, and by most of its directors, each of whom avers the truthfulness of the facts hereinbefore set forth.

The complainants, in reply, file affidavits in which they admit the proceedings in the patent office, substantially as set forth in the defendant's motion, but declare with great particularity the circumstances under which said proceedings were taken, alleging and claiming that the same were taken under a mistake of law, and under the advice of eminent counsel. They further deny that the defendant was misled by the negotiations set forth in their motion, and that they in any way impaired their legal rights to insist upon a continuation of the injunction now in force. They further deny that the defendant was misled by reason of complainants' conduct because of the proceedings in the patent office, and deny that they are estopped by virtue of those proceedings to insist that their patent is in force for the full term of 17 years from the date it was issued.

Wm. B. Bolton, for complainants.

Squire, Sanders & Dempsey and Benj. H. Bristow, for defendants.

RICKS, District Judge, (after stating the facts.) It will be seen from the foregoing statement of facts that the complainants do not deny the proceedings instituted by them in November, 1883, in the patent office, substantially as set forth in the defendant's motion. But they contend that they are not bound by the action of the patent office, taken upon their petition, for several reasons; among these, and chiefly:

First. Because the petition for a limitation upon the duration of their patent, filed by the complainants, and the proceedings in support thereof on their part, were taken under a mistake as to the law, and as to their rights under the patent, and that this error was corrected as soon as possible after discovery.

Second. Because the action and orders of the patent office were without authority of law, of no force and validity, and therefore did not in any way affect the patent.

The complainants' statement of the facts under which this action of the patent office was invoked admits that they were advised and believed at the time that such action was necessary in order to remove doubts as to the validity of the patent as originally issued. These doubts arose because of a decision of one or more of the federal courts that it was essential to the validity of a patent, where foreign patents for the same invention had been applied for, that the date of such foreign patents, and their limitation, should be cited in the application, so that the limitation of the American patent would appear on its face. In view of the uncertainties thus existing as to the validity of the Edison patent, because of these omissions in the application for the patent, and to remove all doubts, the patentee and the assignee both joined in a petition to the commissioner of patents, in which they stated that, while the application for letters patent No. 223,898 was pending, said patentee applied for and obtained letters patent for the same invention in several foreign countries, as hereinbefore fully set forth in the statement of the case. The petitioners further represented that because of the omissions of such recitals in the application

the United States letters patent were granted to the patentee, unlimited, for the full term of 17 years.   The petitioners further say that they were advised that said letters patent, when issued, should have been limited upon their face to the term of the foreign patent having the shortest term prior to the date of the United States patent.   Thereupon, the petitioners tendered the said United States letters patent to the commissioner of patents, and requested that they be corrected according to the provisions of the first clause of rule 164.   Upon this petition the commissioner issued the following certificate:

"Department of the Interior.

"United States Patent Office.

"Washington, D. C., Dec. 18th, 1883.

"In compliance with the request of the party in interest, letters patent No. 223,898, granted January 27th, 1880, to Thomas A. Edison, of Menlo Park, New Jersey, for an improvement in electric lamps, is hereby limited so as to expire at the same time with the patent of the following named having the shortest time to run, viz.: British patent, dated November 10th, 1879. No. 4,576; Canadian patent, dated November 17th, 1879. No. 10,654; Belgian patent, dated November 29th, 1879, No. 49,884; Italian patent, dated December 6th, 1879; and French patent, dated January 20th, 1880, No. 133,756.   It is hereby certified that the proper entries and corrections have been made in the files and records of the patent office.   This amendment is made that the United States patent may conform to the provisions of section 4887 of the Revised Statutes.

[Seal.]                    "Benjamin Butterworth, Commissioner of Patents.

"Approved: M. L. Joslyn, Acting Secretary of the Interior."

On the 6th day of March, 1893, the complainants, as petitioners, forwarded another application to the commissioner of patents, in which they recited their former petition; the action taken thereon; that subsequent thereto, by decision of the circuit court of appeals of the second circuit, said former action of the commissioner was declared to have been taken without authority of law, and therefore void; and asking that the former correction of the records by the commissioner of patents be canceled.   Thereupon, the following action was taken by the commissioner of patents:

"Now, in compliance with the request of the parties in interest, said certificate is hereby canceled, and the proper entries and corrections have been made in the files and records of the patent office.

"In testimony whereof, I have hereunto set my hand, and caused the seal of the patent office to be affixed, this 15th day of March, 1893.

[Seal.]                    "W. E. Simonds, Commissioner of Patents.

"Approved: Cyrus Bussey, Asst. Secretary of the Interior."

What is the legal effect of these applications of the petitioners, and the action of the commissioner of patents thereon?   It is urged on behalf of the defendant that these proceedings, deliberately taken by the complainants, amounted to a voluntary dedication by them to the public, of the patent, from and after November 10, 1893, at which time the British patent expired by limitation.   It is contended in reply that, even though such action was a dedication by the complainants, as claimed, it was a dedication of something which was to be given to the public some time in the future, and long before the dedication was to take effect it was revoked

and annulled, and no rights thereby passed either to the defendant or to the public.

Was this conduct and action of the complainants an abandonment of some right, or a dedication to the public of a privilege or right conferred? The arguments on this point have taken a wide range in the briefs of counsel. The action of the complainants in this case, while in the nature of a dedication to the public of a part of the time for which the sole enjoyment of the privileges of the patent were conferred, is not in all respects like the abandonment of a part of an invention by a failure to claim all of it, or by a disclaimer, in express words, of a part of it. In the latter case, the right of the public to at once appropriate the abandoned or disclaimed part of the invention attaches, and the patentee is powerless to prevent such appropriation. In this case the complainants did not abandon or disclaim anything that could be immediately appropriated. It was a voluntary act by which they declared a limitation upon the duration of their patent, which shortened its term. It was not, however, as complainants contend, a simple declaration that, at the expiration of the shortest foreign patent recited in their petition for correction, they would then dedicate to the public the remainder of its full term of 17 years, conferred by the United States patent. If its legal effect was such a dedication, to take effect 10 years in the future, it would have been a gift or grant which might have been subject to revocation. But the time for which the patentee is granted the sole enjoyment of the monopoly conferred is just as much the subject of a dedication and grant to the public as a part of the invention or process. The law on this subject is well stated in Robinson on Patents, (section 345,) to be as follows:

"The patent privilege is not a mere reward bestowed upon the inventor for past services, the payment of a debt of gratitude towards one who has already conferred a benefit upon the state. It is also a purchase by the government, acting on behalf of the whole people, of some new art or instrument, capable of beneficial use, for which it recompenses the inventor by securing to him for a time its sole enjoyment; and when, without this recompense, it has obtained the invention through his voluntary act, so far from recognizing him as entitled to remuneration, it unhesitatingly appropriates his invention to itself, whatever loss and difficulty may result to him."

What, then, did the complainants intend to do, and what did they think they had the legal right to do, with reference to the legal difficulties which they believed then surrounded them? There can be no doubt as to what their intentions and purposes then were. They asked for the right to limit their United States patent so that it might expire at the same time with the patent named having the shortest time to run. They named in their petition the British patent, No. 4,576, and therein stated that the said patent was dated as of November 10, 1879. They then believed that said patent would expire November 10, 1893; for, if they correctly stated its date, it would by law then expire. The limitation thus deliberately put upon the duration of their own patent was then believed to be necessary to its validity. Acting under such a belief of their

legal relations to the public, they then fixed the limit for their patent for what seemed to them a pressing necessity and a sufficient consideration. Whether the patent office was authorized by law, or not, to make such official correction, the petitioners unquestionably had the legal power to voluntarily fix a limit upon the duration of their own patent. Did that power depend upon future revelations as to the correctness of the legal advice under which they acted? That their proceedings were taken under a mistake of law might give them the right to correct their error by proper application, made within proper time; but such misapprehension could not affect their power or authority to make such limitation of the grant conferred upon them.

But it is contended that their petition for correction was of such an indefinite character that it put the public and all parties interested upon their inquiry as to its legal effect. It is said that the duration of the patents set forth in the petition were not stated, and to ascertain such a limitation involved investigation as to the laws of the respective countries, and that if such investigation had taken place the defendant would have ascertained that the term of the British patent did not begin until it was sealed and granted. But the public, and those interested in the duration of the patent, had the right to accept complainants' statements as to the date of those foreign patents, and to act accordingly. In their petition for correction they aver that they were not advised that the practice of the patent office required an applicant to acknowledge during the pendency of his application a foreign patent applied for and granted subsequent to the filing of such application. The application for the Edison patent was filed November 4, 1879, and the patent was granted January 27, 1880; so that, by the admissions of their petition, the British patent was both applied for and granted between those dates, and expired between November 10, 1893, and January 27, 1894. The complainants cannot object because the defendant acted upon those representations. If complainants had taken no action whatever, but had relied upon their legal rights as they might be subsequently defined, the public would have acquired no advantages by the proceedings now under consideration. The defendant would have acted at its own peril, and have had no claim such as they now assert. The complainants' conduct and public declaration of the facts concerning their patent are binding upon them, and they cannot now be heard to say that they were made in doubt as to their legal rights, and made in such uncertain terms as to put the defendant upon examination as to the facts and the law, and to be bound by its proper interpretation of them. Even conceding that said petition was filed under mistaken advice as to the law, and that it asked only for such action as the patent office might lawfully take, and that the terms in which said action was invoked were such as to put the defendant upon its inquiry as to the law, it was nevertheless a solemn and public act, by which it limited the duration of its own patent to a term shorter than that granted in the original patent. The petition and prayer was for such a limitation, and the complainants

are bound by such declaration and conduct. Can there be any doubt as to their right and power to have made such a declaration and abandonment of an existing right? Such power is clearly recognized in Insurance Co. v. Mowry, 96 U. S. 547.

But it is said this dedication was revoked. On the 6th of March. 1893, the complainants filed their petition in the patent office, as hereinbefore stated, and recited, further, that, by the decision of the circuit court of appeals for the second circuit, said action of the patent office was declared to be "without jurisdiction and wholly void," and for these reasons asking that the records of the patent office "be amended so as to cancel the said statements and limitations, and so as to restore them to the same condition in which they were at the time of the original grant of said patent," and, further, "that the said certificate of correction attached to the said letters patent be canceled so that the patent will be in the same condition in which it was originally granted." Upon this petition the commissioner of patents, on March 15, 1893, ordered "that said certificate is hereby canceled, and the proper entries and corrections have been made in the files and records of the patent office."

By these proceedings it is claimed that if the petition for correction, and the proceedings thereunder of November, 1883, amounted to a dedication, such dedication was then revoked, and that the patent stands as though no correction had ever been taken or made. It is further contended that the holding by the circuit court of appeals for the second circuit that the action of the commissioner on the first petition for correction was wholly void, and that the surrender of the letters patent for correction was without legal authority and of no effect, should be conclusive of this controversy. But this is not a controversy in which the authority of the complainants to surrender their letters patent to the commissioner of patents for correction, or his power to make such correction and amend the records of his office, are involved. The defendant is not here asserting any such power, or claiming any such result as legal or valid. It is here, however, contending that whether the commissioner of patents had legal authority for his action, or not, the complainants certainly had the right and power to publicly and solemnly limit the duration of their own patent, and make record of their intention to abandon it to the public from and after November 10, 1893, the time of the expiration of their British patent. Having done so, and the defendant having in good faith acted on said public declaration, it now contends that the complainants are estopped from coming into court and asserting that such conduct was a mistake as to the law, and therefore not binding upon them. This involves the consideration of the question as to whether the complainants' conduct was a representation as to something it proposed to do in the future, and therefore subject to revocation, or whether it was an abandonment of an existing right, I find the exact question, as it seems to me, fairly settled by the supreme court in the case of Insurance Co. v. Mowry, 96 U. S. 547. In that case, the court said:

"The only case in which a representation as to the future can be held to be an estoppel is where it relates to an intended abandonment of an existing right, and is made to influence others, and by which they have been induced to act. An estoppel cannot arise from a promise as to future action with respect to a right to be acquired upon an agreement not yet made. The doctrine of estoppel is applied with respect to representations of a party, to prevent their operating as a fraud upon one who has been led to rely upon them. They would have that effect if a party who, by his statements as to matters of fact or as to his intended abandonment of existing rights, had designedly induced another to change his conduct or alter his conditions in reliance upon them, could be permitted to deny the truth of his statements, or enforce his rights against his declared intention of abandonment."

But in a later decision the same court said it is not necessary that there should be a design or a purpose to mislead the opposite party, on the part of the person to be estopped. In the case of Bank v. Morgan, 117 U. S. 108, 6 Sup. Ct. 657, the supreme court approvingly said:

"In Continental Nat. Bank v. National Bank of Commonwealth, 50 N. Y. 575, it was held not to be always necessary to such an estoppel that there should be an intention upon the part of a person making a declaration or doing an act to mislead the one who is induced to rely upon it. 'Indeed,' said Folger, J., 'it would limit the rule much within the reason of it if it were restricted to cases where there was an element of fraudulent purpose.'"

Many other cases are cited by counsel, pro and con, which it is not necessary to consider and review. The exact question we have under consideration seems to be met by the foregoing decisions, and are conclusive.

While it is true that the complainants' proceedings in the patent office were not had with any reference to the defendant, but had reference solely to their relations to the public, the defendant had, as one of the public, the same right to be influenced and governed by the complainants' conduct as though it had been the result of their representations to each other as individuals or corporations. The complainants' proceedings were a matter of public record. Their acts and conduct were of such notoriety that the defendant, by law, was bound to take notice of them, so far as they affected its legal rights under the complainants' patent.

But conceding that there is doubt as to whether the above decisions are conclusive of the controversy, the revocation which the complainants claim to have made of their dedication to the public was not made until March, 1893, nearly 10 years after their voluntary limitation of the term of their patent, as hereinbefore stated. If they were in doubt as to the legality of their conduct in the proceedings in the patent office, they should have acted so soon as such mistake was suggested. They could not wait until the public had acted on their dedication, had acquired rights and equities, and then, after the courts had declared their action unauthorized, proceed to revoke their grant.

Did the defendant, in good faith, act upon the complainants' limitation of the life of their patent, and was it induced so to act by the conduct of the complainants, and is it now in such relation to the complainants as estops them from denying that their conduct induced the defendant to make its investments and act as it has set

forth in its motion now under consideration?    The circumstances under which the defendant began its enterprise of manufacturing electric incandescent lamps, the different stages in the progress of its development, and the reasons inducing it to increase its capital, are fully set forth in its motion, and as hereinbefore recited.    Whatever may be the complainants' claim with reference to the defendant's statement of the circumstances under which it originally entered into this enterprise, it seems well established by the affidavits of the defendant's directors that its capital stock was increased, and its capacity for manufacturing incandescent lamps greatly enlarged, by reason of its belief that the complainants' patent, by its own conduct, was limited so as to expire on the 10th of November, 1893. This was a very important fact, and the claim that it largely influenced the defendant in its conduct is both reasonable and natural. For the reasons hereinbefore fully considered, it seems to me plain that the complainant is estopped from now claiming that its conduct did not induce such well-defined belief as to the limitation of its patent on the defendant's part.    Without deciding how far others, not similarly situated, had the right to rely upon such conduct on the part of the complainants, or without passing upon the question of how far the public generally acquired rights under the complainants' proceedings in the patent office, by which they limited the life of their patent, it is sufficient to find, under this motion, that the defendant, by reason of the circumstances particularly set forth in its motion, did rely in good faith upon the complainants' conduct, and had a right to be, and was in fact, influenced thereby.

The application for a dissolution of the injunction is based upon evidence as to a fact which did not exist at the time the temporary injunction was allowed.    At the time such application was made, the complainants' patent had not then expired, according to the limitation put upon it by its proceedings in the patent office.    The rule is well settled that on such an application the complainant's rights to an injunction must be clearly established.    While it is true that, on a motion to dissolve, the burden of proof is on the defendant, yet the rule is equally well settled that evidence which would prevent the allowance of an injunction would be sufficient to dissolve it, and that an injunction will be dissolved on new evidence raising grave doubts as to the complainant's right to the temporary injunction in force.    The rule is well expressed by Judge Nixon in the case of Cary v. Bed Co., 26 Fed. 38.    In that case, the complainants' patent, for the protection of which a temporary injunction was asked, had been sustained by three different circuit courts prior to the filing of the bill in Judge Nixon's district.    Upon the strength of those prior adjudications, Judge Nixon ordered the injunction, "without an examination of the merits, or expressing anything upon the validity of the patent."    But, upon motion to dissolve, new affidavits were offered to show prior use.    After an examination of these affidavits, Judge Nixon says:

"It does not appear that such testimony of prior discovery, knowledge, and use of the invention was brought to the notice of either of the learned judges

who granted the injunction in the other cases. * * * I do not think that I should have seen my way clear to allow the preliminary injunctions in the present case if it had been presented on the original motion, and the rule is a good one that the evidence which would prevent the issuing of an injunction ought to be regarded as sufficient to dissolve one already granted."

For the reasons hereinbefore stated, if, on the application for the injunction now in force, the facts now relied upon in support of the motion to dissolve had been available as a defense, I would not have allowed the temporary injunction. The complainants' right to such an injunction under such a defense would have been so doubtful that it would not have been entitled to it under the rules cited. To continue the injunction now, in view of these doubts, would certainly be a great hardship upon the defendant. According to the affidavits now before the court, the defendant is a solvent corporation. Under the Ohio law, the personal liability of the stockholders is an additional indemnity to which the complainants may look in case, upon a final hearing, its right to a permanent injunction should be established.

As the case is now presented on the motion to dissolve, one of the two parties must suffer loss. If the injunction is continued, the defendant is wholly without remedy. It has shown that it was honestly misled by complainants' conduct, and in good faith made additional investments upon the belief so formed. The complainants cannot complain if, for this reason, the benefit of the doubts expressed are given to the defendant, and the injunction is dissolved. If I am in error as to this conclusion, no great harm can result to the complainants, for if such error is established they can recover for the damages caused thereby, and their right to contest as to other infringers not able to show such meritorious claims to estoppel as defendant has established can be asserted without prejudice from this decision.